**UNITED STATES of America,**
**Appellant,**

v.

**Genevieve PIERCE, Carrie Pierce McCoy, Anna Pierce, Ruth Carmichael nee Urton, Marcus Pete, Jr., and Elizabeth Pete, Appellees.**

**No. 14671.**

United States Court of Appeals
Ninth Circuit.

Aug. 9, 1956.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Perry W. Norton, Asst. Atty. Gen., Roger P. Marquis, John C. Harrington, Attorneys, Department of Justice, Washington, D. C., for appellants.

John W. Preston, John W. Preston, Jr., Los Angeles, Cal., Oliver O. Clark, La Canada, Cal., David D. Sallee, Santa Monica, Cal., for appellees.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

This is another of a series of cases involving the rights of certain members of the Agua Caliente Band of Mission Indians whose reservation is located in and near the resort city of Palm Springs, California. Appellees in the district court, members of the Band, filed a complaint for declaratory relief jurisdiction of the district court under Title 25 U.S. C.A. § 345; Title 28 U.S.C.A. §§ 1353, 2201, in which they severally sought adjudication of their claims that they were entitled to trust patents for lands which they had selected as allotments. The Secretary of the Interior had issued trust patents to other Indians of the tribe for portions of lands which appellees had theretofore selected. Appellees also sought declarations that they were entitled to the income from the land they had selected and that they were entitled to the equalization of allotments and the apportionment of the tribal waters of the Reservation.

The district court affirmed the action of the Secretary of the Interior in the issuance of trust patents to selectee Indians other than appellees here, as to those lands regarding which there were conflicting selections; but held that appellees were entitled to trust patents to the lands included in appellees' nonconflicting allotment selections; and also held that appellees here were entitled to income therefrom from the dates of se-

lections rather than from the dates of issuance of the trust patents.

The trial court further held that a just share of the tribal waters was appurtenant to the land and that appellees were entitled to have the waters upon the Reservation apportioned in such a manner as would secure for each appellee a just share thereof. The trial court also found that appellees were entitled to make further allotment selections so that all the allottees should thereby have lands of approximately equal value.

Jurisdiction was reserved by the district court to effectuate the allotment of the lands and the apportionment of the tribal waters. The district court's Order for Findings and Judgment is reported in Segundo v. United States, D.C. S.D.Cal.1954, 123 F.Supp. 554.

The United States, as trustee for the Indians, appealed urging reversal upon three main points:

(1) The district court had no jurisdiction to make declarations as to the Indian's rights to an accounting for income, the equalization of allotments, or the apportionment of tribal waters.

(2) If the court had jurisdiction, appellees were entitled to the income derived from the lands included in their nonconflicting allotment selections from the date of the issued patents and not from the dates of the allotment selections.

(3) The court erred in holding that it was the duty of the Secretary of the Interior and the United States to apportion or allot the tribal waters among the individual Indians.

### Jurisdiction

The act of 1894 as amended, Title 25 U.S.C.A. § 345,[1] provides:

"§ 345. Actions for allotments. All persons who are in whole or in part of Indian blood or descent who

---

1. Act of August 15, 1894, c. 290, § 1, 28 Stat. 286, 305; February 6, 1901, c. 217, § 1, 31 Stat. 760; March 3, 1911, c. 231, 36 Stat. 1167.

are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their rights thereto in the proper district court of the United States; * * *."

The United States contends that the jurisdictional prerequisite for any action under the section quoted is the existence of a specific allotment selection which has been *unlawfully denied* by the Secretary of the Interior, and since the district court determined that appellees were not entitled to those portions of their selections which had been denied by the Secretary because of conflicts, the court's jurisdiction was exhausted at that point, and the court thereafter was without jurisdiction to determine other controversies concerning the allotment policy and management of allotted lands.

The contention is based upon an unreasonable limitation as to the purpose of the statute. So limited, the allotment might be made, but subject to such restrictions as would deny the Indian full possession of the land or illegal restraint as to its use, occupancy, or as to the produce therefrom, and he could do nothing about it but to complain with the hope of adjustment. In Arenas v. Preston, 9 Cir., 1950, 181 F.2d 62, 66, this court stated:

"We appreciate the fact that the allotment scheme as to Mission Indians was adopted by Congress in accordance with its belief that the time had come to direct the Indian away from the tribal system of life and into the nation's system of individual responsibility and ownership of property. It thought, how-

ever, that a sudden and complete change over at one step would result in many allottees losing their property through inexperience. Accordingly the restriction against alienation and encumbering was provided. It was contemplated, however, that eventually (the details need not be recited) all restrictions would be removed."

See Arenas v. United States, 1944, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363, for detailed history of allotments to the Palm Springs Indians.

The United States' contention in the instant case is in violent conflict with the whole allotment scheme. In accord with this conclusion is Gerard v. United States, 9 Cir., 1948, 167 F.2d 951, wherein this court construed Title 25 U. S.C.A. § 345, the codification of the 1894 Act as amended, to give Blackfeet Indians the right to sue in the United States District Court in a suit respecting rights under a patent in which the United States was trustee. In that case there was not an "unlawful denial" of a patent which the government urges here as a jurisdictional prerequisite. It was stated in the Gerard case, supra, 167 F.2d at page 954:

"That is to say, the Act of 1901 [2] gave jurisdiction to the district courts. in matters *other than* those where allotments were sought in the first instance." [Emphasis supplied.]

 Of course, we agree that courts are not to determine questions of Indian land policy, but to adjudicate claims of right under a legal policy is, of course, to accept and acquiesce in the adopted policy. In Arenas v. United States, 1944, 322 U.S. 419, 432, 64 S.Ct. 1090, 1095, it was said:

"But courts are not to determine questions of Indian land policy, nor can the Secretary on grounds of policy deprive an allottee of any rights he may have acquired in his

2. See footnote 1.

allotment. To separate questions of right from questions of policy requires judicial examination of any well pleaded allegation of the complaint and of any grounds advanced for refusal of the patent."

Although Arenas v. United States, supra, involved the question of the right of an Indian to secure an allotment or patent, we think the language appropriate also to the protection of the interests and rights of the Indian in his allotment or patent after he has acquired it. We hold with the trial court that jurisdiction of the subject matter lies with the district court.[3]

## The Equalization Issue

There is no issue in the case upon the right of the Indians to have their al-

3. The government argues that the equalization process was deferred until after the primary allotments had been equalized and further that none of the appellees or other members of the tribe had made a request for any specific land for equalization purposes and thus there was no case or controversy over which the court had jurisdiction. The government argues that this very suit caused the unstable condition as to the primary allotments.

We do not agree with the government that there was no case or controversy. An Indian Agency official testified that there had not been made any attempt to equalize the allotments to the Indians in Palm Springs. The reasons advanced by the government for refusing to equalize the allotments would apply equally as well to a refusal to allot lands to new born babies. But the government admits that new born babies were being granted trust patents, thus weakening the argument that this suit caused such a state of turmoil that no new allotments could be made.

There would appear to be no specific and direct demand for equalization. It is not disputed, nor could it be, that the Secretary had long delayed in granting allotments and only did so after costly and timetaking litigation. That equalization of values in the allotments must be made with reasonable promptness is not denied, and it follows that the allotment process has not reached completion until this is done. That the process is at a standstill cannot be blamed upon the instant action which is and of itself a demand for action. We think these facts dispose of the government's point that appellees have not exhausted their available administrative remedies before resorting to the courts for action in equalizing their allotments.

After considering the record as a whole, we are in agreement that there has been an unreasonable delay on the part of the government. The history of this tribe and other tribes testifies to the delaying tactics which have been unreasonably imposed upon the Indians. When, if ever, the Palm Springs Indians would have been put in the enjoyment of their allotment rights, is very questionable but for the able and persistent efforts of Honorable John W. Preston, assisted by David Sallee, Oliver O. Clark, and, before them, Thomas L. Sloan.

The United States also argues that there had not been a proper request for the payment of accrued income.

An Indian official, Douglas Clark, in answer to a question, whether he knew that for more than two years two attorneys for appellees had been asking the Indian Department at Sacramento, California, at Washington, D. C., and at Palm Springs, for issuance of trust patents on the nonconflicting selections and for the payment to appellees of the income that had accumulated on those areas—replied:

"A. I don't know that. I didn't know about the trust patents.

"Q. Or the demand for payment of those rentals to them?"

Another official, Henry Harris, testified:

"Q. Have you ever received a written request that any of the income from the undisputed portions of the allotments be paid over to any of the plaintiffs? A. No, Sir.

"Q. No written request? A. No, Sir.

"Q. Have you ever had an oral request on that fact? A. Yes, Sir."

Counsel for the government also stipulated that one of the appellees' counsel, Mr. Preston, did take the matter up as to payment of income with him, and also that Mr. Preston contacted a Mr. Mulroney, head of the Trial Department of the Department of Justice, at his suggestion. Counsel for the government further admitted that he received a letter from Mr. Mulroney stating that he had received a letter from Mr. Preston regarding the same matter.

We hold that there is enough evidence here to sustain the action of the trial judge in making his adjudication on the subject.

lotments equalized, that is, so arranged that each allottee shall have allotments of fairly equal value. In certain instances, allotments chosen conflicted with allotment choices previously made by others of the Band.

■ It must be borne in mind that each Indian of whatever age and at any given time is entitled to an allotment of land with the concomitant enjoyment of such land. Newly born babes are entitled to and are being granted their allotments. In time, there will be no unallotted land. The situation seems to call for prompt action in processing allotments, including equalization where proper. Inequalities exist without doubt, and that the subject is fraught with difficulties is equally certain.

■■ The trial court found the Secretary remiss in performing his duty of equalizing the allotments of appellees, and we are not prepared to hold such finding clear error. While we think equalizing would best be left to the Indian Service, we hold that the court can and should proceed to do it unless the court is assured that the Service will proceed with diligence. See Note 3, supra.

### Judgment Against United States Issue

■ We find without merit the claim of the government that the court lacked jurisdiction to order the payment of income collected by the government, because such would be a money judgment against the United States. See Arenas v. Preston, 9 Cir., 1950, 181 F.2d 62, 64, note 4 thereto, certiorari denied, 340 U. S. 819, 71 S.Ct. 50, 95 L.Ed. 602. The government is holding the land, together with the income, as one bundle of rights, in trust for the benefit of the cestui que trust, and the court has equitable jurisdiction to order the trustee to account to the beneficiary. The incidence of ownership applies to the bundle.

### Income on Uncontested Allotments

■ Contrary to the government's view, and agreeable to that of the trial court, we are of the opinion that appellees were entitled to income derived from the lands of their nonconflicting allotment selections, from the dates of their selections rather than from the dates of the issuance of the trust patents.[4]

The authorities support the proposition expressed in First National Bank of Decatur, Neb. v. United States, 8 Cir., 1932, 59 F.2d 367, 369, that:

"Title to the land which defendant confessedly owns was initiated when the individual Indian made selection of and filed upon his allotment of land. That was the inception of the title of the Indian allottee, and when the patent was issued it related back to the inception of the title and no further."

(See other citations in the text.)

The district court reasoned that equitable title to appellees' nonconflicting and noncontested allotment selections vested in appellees as of the date of their *valid* selections and, since the issuance of a trust patent is merely a ministerial act, that appellees were entitled to the income from the land from the time of selection. United States v. Whitmire, 8 Cir., 1916, 236 F. 474, 480; First National Bank of Decatur, Neb. v. United States, 8 Cir., 1932, 59 F.2d 367, 369. The government here argues that these cases are distinguishable and are not controlling, arguing that the Mission Indian Act of January 12, 1891, 26 Stat. 712, under which the allotment of the Agua Caliente (Palm Springs) Reservation has been proceeding, contemplated that at first trust patents would be issued to the tribe as a whole, and that at some future time the lands would be alloted in severalty

4. After the trial appellees were issued trust patents for the nonconflicting selections on March 23, 1954, and apparently appellees have been collecting the rentals due and payable since that date. The government in its brief states that it has paid over to Genevieve Pierce and Annie Pierce that portion of rentals previously received which was attributable to the period beginning on March 23, 1954.

and trust patents would be issued to the individual Indians.

■ We agree with this construction of the Act, but it does not support the conclusion that only from the date of issue of a patent is there a severance of equitable title from tribal ownership to that of the individual Indian. We do not agree with the government that Sections 5 and 8 of the Mission Indian Act (quoted in the margin) [5] support its contention. We hold that, once a valid selection is made, it is the duty of the Secretary of the Interior to issue a trust patent within a reasonable time, and if the Secretary fails to issue the patent, the court may declare a severance from tribal ownership to individual ownership *as of the date* the trust patent *should have been issued.*

■ The decisions of this court are squarely in accord. In United States v. Arenas, 9 Cir., 1946, 158 F.2d 730, certiorari denied, 331 U.S. 842, 67 S.Ct. 1531, 91 L.Ed. 1853, we held that an Agua Caliente Indian was entitled to a trust patent with an effective date as of May 9, 1927, the *date of his selection.* The government answers that the cited case held only when the entitlement to the trust period commenced, not that the Indian was entitled to the income from the date thereof. We think the right to income is coincident with the commencement of the entitlement to such trust period, and if this is not inferable in the last above mentioned Arenas case, we now so hold. Once the trust period has commenced, the government assumes the role of trustee for the benefit of the individual Indian for all income collected. As we held in United States v. Arenas, supra, 9 Cir., 1946, 158 F.2d 730, when a valid selection has been made, the only beneficiary to whom the trustee is accountable is the individual Indian, and not the tribe.

We note that the Supreme Court indicates that this is the correct conclusion in Arenas v. United States, 1944, 322 U.S. 419, 434, where in footnote 17, 64 S.Ct. 1090, 1096, the following statement is made:

> "The Solicitor of the Department of Interior has himself indicated that where the Indian has done all he could to get his patent and has failed because of the neglect of public officers the courts will generally protect him, and that this may be proper even where there has been a failure to approve the allotment. See 55 Decisions of the Department of the Interior 295, 303, 304."

### Water Rights

We cite in the margin the pertinent Findings of Fact, Conclusions of Law, and portions of the judgment of the trial court:[6]

---

5. Section 5: " * * * That these patents, when issued, shall override the patent authorized to be issued to the band or village as aforesaid, and shall separate the individual allotment from the lands held in common, which proviso shall be incorporated in each of the village patents."

Section 8: " * * * Subsequent to the issuance of any tribal patent, or of any individual trust patent as provided in section five of this act, any citizen of the United States, firm, or corporation may contract with the tribe, band, or individual for whose use and benefit any lands are held in trust by the United States, for the right to construct a flume, ditch, canal, pipe, or other appliances for the conveyance of water over, across, or through such lands, which contract shall not be valid unless approved by the Secretary of the Interior under such conditions as he may see fit to impose."

6. Finding of Fact XX: "The evidence further shows that the Secretary has been remiss in performance of the duty imposed upon him by law, not only in the allotment of the land proper to the Agua Caliente Band of Mission Indians, but also by his failure even until now to allot water rights appurtenant thereto; but only a few members of the Band are parties to this action, and it appears that all members, if practicable, should be joined as parties to any action for equitable apportionment of the water rights appurtenant to the allotted lands."

Conclusion of Law XIX: "An allotment of tribal land includes a just share of tribal water rights [United States v. Powers, 1939, 305 U.S. 527, 59 S.Ct. 344,

■ We are of the opinion and hold that there is no support in the pleadings or in the evidence for the findings of fact and conclusions of law and, therefore, no support for that part of the judgment to the effect that the trial court will hold the case open for the joining of the users of water from the tribal source and for the adjudication of the plaintiffs' water rights. All findings of conclusions of law and the judgment pertinent to such subject matter are set aside. The facts have not been alleged or developed to the extent that would give the district court jurisdiction to interfere with the Secretary of the Interior's administration of the tribal waters.

Affirmed in part, reversed in part, and remanded with instructions to proceed in accord with this opinion.

83 L.Ed. 330] and this Court has jurisdiction in this action to declare that a just share of tribal waters is appurtenant to and accompanies an allotment of tribal land. [28 U.S.C. § 2201]"

Conclusion of Law XX: "It is the administrative duty of the Secretary of the Interior 'to prescribe such rules and regulations as he may deem necessary to secure a just and equal distribution [of water] among the Indians * * *' [25 U.S.C. § 381; id. §§ 331, 382 et seq.; United States v. Powers, supra, 305 U.S. at page 533, 59 S.Ct. 344]; and whenever it appears that the Secretary has failed or refused to perform this duty or has otherwise abused the discretion thus reposed in him by law, this Court has jurisdiction under 25 U.S.C. § 345 to adjudicate the resulting controversy between the Secretary and the allottees, by decreeing the precise nature and extent of all water rights appurtenant to and accompanying allotments of tribal land; and such decree 'shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him * * *' [25 U.S.C. § 345; Arenas v. United States, supra, 322 U.S. at pages 429-430, 432, 64 S.Ct. at pages 1094, 1095]."

Conclusion of Law XXI: "The evidence shows that the Secretary has been remiss in performance of the duty imposed upon him by law, not only in the allotment of the land proper to the Agua Caliente Band of Mission Indians, but also by his failure even until now to allot water rights appurtenant thereto; but only a few members of the Band are parties to this action, and it appears that all members, if practicable, should be joined as parties to any action for equitable apportionment of the water rights appurtenant to the allotted land."

Conclusion of Law XXII: "Since plaintiffs here cannot represent the interests of the unjoined members of the Band because of their conflicting claims to allotments [see Hansberry v. Lee, 1940, 311 U.S. 32, 44-45, 61 S.Ct. 115, 85 L. Ed. 22] and, the membership being relatively small, all could be joined as parties to an action, there is no basis for considering the case at bar to be a class action [Fed.Rules Civ.Proc., Rule 23(a), 28 U.S.C.A.]."

The judgment of the trial court included the following:

"II. That plaintiffs have judgment against defendant United States of America as follows:

"(1) That the right to a just share of the tribal water is appurtenant to and accompanies each allotment of tribal lands, and plaintiffs are entitled to have apportioned, and it is the duty of defendant United States of America to apportion, the waters upon the Reservation of said Band of Indians in such manner as will secure for each plaintiff a just share of the tribal waters;

* * * * *

"IV. That the court hereby retains jurisdiction of this action and the parties thereto and the subject matters thereof, for the purpose of effectuating its judgment and decree in all respects, including the rights of plaintiffs (1) to their just shares of the waters of the Reservation, (2) to the income from the lands selected by them not in conflict with other selections, and (3) to make further selections for the purpose of equalizing the values of the lands allotted to plaintiffs with the lands allotted to the several members of the Band."