Alex SCHOLDER, Individually and on behalf of others similarly situated, Pala Band of Mission Indians and Rincon Band of Mission Indians, individually and on behalf of others similarly situated, Appellants,

v.

UNITED STATES of America, Department of the Interior, Bureau of Indian Affairs, Stewart L. Udall, Secretary of the Interior, Robert L. Bennett, Commissioner, Bureau of Indian Affairs, William E. Finale, Director, Sacramento Office, Bureau of Indian Affairs, and Jess T. Town, Field Representative, Riverside, California Area Field Office, Bureau of Indian Affairs, Appellees.

No. 24306.

United States Court of Appeals, Ninth Circuit.

June 22, 1970.

Rehearing Denied July 23, 1970.

1124

Richard B. Collins, Jr., for Alex Scholder.

George F. Duke, Lee J. Sclar, of California Indian Legal Services, Berkeley,

Cal., David H. Getches, Escondido, Cal., for Rincon Band of Mission Indians.

Robert S. Pelcyger of California Indian Legal Services, Escondido, Cal., Alexander, Inman & Fine, Beverly Hills, Cal. for Pala Band of Mission Indians.

George R. Hyde, Atty., Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Lands & Natural Resources Division, Miles Flint, Civil Division, U. S. Dept. of Justice, Washington, D. C., Charles J. Fanning, Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., San Diego, Cal., for appellees.

Before BROWNING, DUNIWAY and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge.

The Indian appellants, Scholder and the class of individual Indians he represents and the Pala and Rincon Bands, brought suit challenging the authority of the Bureau of Indian Affairs to expend funds appropriated for Indian irrigation systems to build an irrigation lateral on non-Indian land within the Pala Indian Irrigation Project and to charge a pro rata portion of the construction cost to Indian lands in the project. Scholder is an Indian holder of a trust allotment within the Pala project who claims to represent all other Indian allottees within the project. The district court held that it lacked jurisdiction over Scholder's class action and dismissed the action as to them. It granted summary judgment against the remaining appellants, and this appeal followed.[1]

Willard Allers, a non-Indian, purchased from an Indian a 10-acre lot located in an area served by the Pala Indian Irrigation Project. That project supplies water to Indian and some non-Indian land, including Allers', within the project. Shortly after Allers purchased his property, he requested the Bureau of Indian Affairs, which administers the project, to construct a lateral connecting it with the project's central irrigation lines. The Bureau's district director

granted the request. The cost of the lateral was estimated at $800. Before work on the lateral had progressed beyond the initial stages, appellants brought this action to enjoin further construction, a preliminary injunction issued, and construction has been stayed until the present time.

I.

Appellants' first set of claims challenges the expenditure for Allers' lateral as an unconstitutional taking, a conversion, an abuse of discretion, a breach of fiduciary duty, and as a payment unauthorized by Congress. We deal first with these claims as asserted against the United States, the Department of the Interior, and the Bureau of Indian Affairs.

The United States cannot be sued without its consent. Appellants argue that that consent is found in 25 U.S.C. § 345 and 28 U.S.C. §§ 1353, 1361, and 1362. 28 U.S.C. § 1361 provides no such consent. (White v. Administrator of General Services Administration (9th Cir. 1965) 343 F.2d 444.) Nor do we see how 28 U.S.C. § 1362 can be read as doing so. The purpose of section 1362 was to eliminate the $10,-000 jurisdictional requirement of 28 U. S.C. § 1331 for a particular class of suits, namely, federal-question actions brought by an Indian tribe or band. (Quinault Tribe of Indians, etc. v. Gallagher (9th Cir. 1966) 368 F.2d 648, cert. denied (1967) 387 U.S. 907, 87 S. Ct. 1684, 18 L.Ed.2d 626; H.R.Rep.No. 2040, 1966 U.S.Code & Ad.News, pp. 3145–3146.) Nothing on the face of section 1362 indicates an intention by Congress to waive sovereign immunity, and we know nothing in its legislative history to suggest such a purpose.

Appellants place primary reliance upon 25 U.S.C. § 345, which grants district courts jurisdiction "to try and determine any action * * * involving the right of any person, in whole or in part in Indian blood or descent, to

---

1. The decision is reported at 208 F.Supp. 1282.

any allotment of land under any law or treaty * * * " [2] The section is a limited consent by the United States to suit (e. g., Heckman v. United States (1912) 224 U.S. 413, 441, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Halbert (9th Cir. 1930) 38 F.2d 795, rev'd on other grounds (1931) 283 U.S. 753, 51 S.Ct. 615, 75 L.Ed. 1389), and thus we must decide whether appellants' challenge to the Allers expenditure falls within the scope of that consent.

■ The section 345 consent is not restricted to suits to compel the issuance of an allotment in the first instance. It extends consent at least to certain kinds of suits designed to protect or preserve an allotment once issued. (United States v. Pierce (9th Cir. 1956) 235 F. 2d 885; Gerard v. United States (9th Cir. 1948) 167 F.2d 951.)[3] In Pierce, for example, we rejected a Government contention that section 345 was limited to instances in which the Secretary of the Interior had unlawfully denied a specific allotment selection:

> "The contention is based upon an unreasonable limitation as to the purpose of the statute. So limited, the allotment might be made, but subject to such restrictions as would deny the Indian full possession of the land or illegal restraint as to its use, occupancy, or as to the produce therefrom,

and he could do nothing about it but to complain with the hope of adjustment." (235 F.2d at 888.)

The statement must be read, however, in the context of the claims advanced in Pierce: equalization of allotments, payment of income from withheld allotments, and apportionment of tribal waters.[4]

■ Appellants argue that their claim is similar to the claim in Pierce for the apportionment of tribal waters. We disagree. Pierce must be distinguished on the ground that an allotment grant includes, as a right appurtenant to the land, "the right to use some portion of tribal waters essential for cultivation * * *." (United States v. Powers (1939) 305 U.S. 527, 532, 59 S.Ct. 344, 346, 83 L.Ed. 330; see U.S. Interior Dept., Federal Indian Law (1958) 785–87.)[5] These appellants are not claiming denial of a right acquired appurtenant to their allotment. They are challenging the Bureau's administration of an Indian irrigation system. We cannot fairly say that one's right to an allotment includes as an incident of that right a guarantee of judicious administration of an irrigation project. The consent given in section 345 does not encompass appellants' challenge to the expenditure, and the district court properly dismissed the individual appellants' first set of

2. 28 U.S.C. § 1353 is a recodification of the jurisdictional portion of § 345. Judicial attention has centered on § 345, and we follow this practice. Appellants have not argued that their rights under § 1353 exceed their rights under § 345.

3. Pierce and Gerard have undercut the sweeping statement in (although perhaps not the holding of) United States v. Eastman (9th Cir.) 118 F.2d 421, 423, cert. denied (1941) 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 510, that § 345 authorizes only "suits to compel the making of allotments in the first instance." The same language is repeated in United States v. Preston (9th Cir. 1965) 352 F.2d 352, 358, but only as dictum; dismissal there was required because the plaintiff was non-Indian. We cannot read Preston as sub silentio overruling the holding in Pierce and Gerard.

4. While finding that § 345 would afford jurisdiction for an apportionment claim (235 F.2d at 887–889), the court nevertheless dismissed that claim because the facts alleged and proven were insufficient to support relief. 235 F.2d at 892.

5. See also United States v. Preston, supra note 3, 352 F.2d at 357–358. But the court went on to say: "We think it is equally plain that the Indian allottee is not authorized by § 345 to sue the United States for the purpose of claiming or establishing any assignment or distribution of water rights, rights which he automatically acquired as a result of the creation of the reservation * * *." 352 F.2d at 358. As explained in note 3 supra, this is dictum.

claims against the United States. The Pala and Rincon Bands' expenditure claims against the United States should also have been dismissed for the same reason.

The Department of the Interior and the Bureau of Indian Affairs are merely administrative arms of the United States. Because the expenditure claims fail against the United States, they must also fail against the Department and the Bureau. (*See* Simons v. Vinson (5th Cir.) 394 F.2d 732, cert. denied (1968) 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379; Chournos v. United States (10th Cir. 1964) 335 F.2d 918.)

■ This brings us to the expenditure claims against the named officials. Courts "[will] indulge in the legal fiction that a suit against a government officer in his official capacity [is] not a suit against the sovereign, and hence not subject to defeat by the doctrine of sovereign immunity, only if (1) the officer's powers are limited by statute and his actions were ultra vires, or (2) the officer was acting unconstitutionally or pursuant to an unconstitutional grant of power from the sovereign." (Washington v. Udall (9th Cir. 1969) 417 F.2d 1310, 1314.) Despite appellants' urgings to the contrary, neither exception is applicable here.

The defendant officials did not exceed statutory limitations on their authority. The funds used on the Allers lateral were appropriated by Congress for the Bureau in 1965 and 1966 for "construction, major repair, and improvement of irrigation and power systems. * * * "[6] Although these funds were to be used only on Indian irrigation projects, we cannot discern a congressional intent that they be used only to benefit Indians. Indian irrigation projects have been sponsored and administered by the United States for over 80 years, and at all times the projects have served non-Indians as well as Indian lands within their boundaries.[7] In the budget requests that led to the appropriations in question, the Bureau specifically mentioned non-Indian lands within Indian projects:

"The development and extension of irrigation projects on Indian reservations are primarily for the benefit of resident reservation Indian families. The facilities, however, also directly benefit the surrounding community, as well as non-Indian-owned lands included within the projects." [8]

■ Chapter 11 of Title 25 of the United States Code, dealing with irrigation of "Indian allotments," again shows that Congress contemplated non-Indian use of Indian projects. Section 389 authorizes the Secretary of the Interior to investigate irrigation charges levied upon "owners of non-Indian lands under Indian irrigation projects" and to recommend deferral of those charges in appropriate cases.[9] The section is analogous to section 386a, allowing for ad-

---

6. Act of July 7, 1964, Pub.L. No. 88–356, 78 Stat. 273, 275; Act of June 28, 1965, Pub.L. No. 89–52, 79 Stat. 174, 176. The funds were to "remain available until expended." The Pala project is not specifically mentioned in either bill, but it was among the projects listed by the Bureau in its requests for the appropriations. *E. g.*, Hearings on H.R. 6767 Before the Subcomm. on the Department of the Interior and Related Agencies of the House Comm. on Appropriations, 89th Cong., 1st Sess. (1965) 868. Each bill supplied $20,000 for the Pala project.

7. *See generally* U. S. Interior Dept., *supra*, at 294–98; Investigation of the Bureau of Indian Affairs, H.R.Rep.No.2503, 82d Cong., 2d Sess. (1953) 21 (575,000 of the

848,000 acres under irrigation on Indian reservations are Indian-owned); Memorandum of the Deputy Solicitor, Department of the Interior, Appendix B of Appellees' Brief (1968).

8. *Hearings, supra* note 6, at 867. Identical language was used before both Houses of Congress for both bills.

9. 25 U.S.C. § 389 provides in pertinent part:
"The Secretary of the Interior is authorized and directed to cause an investigation to be made to determine whether the owners of non-Indian lands under Indian irrigation projects * * * are unable to pay irrigation charges, including construction, maintenance,

justment of charges against Indian-owned land.[10] Elsewhere Congress has set out a statutory plan for alienation of Indian allotments. (25 U.S.C. §§ 348, 349, 405, 483, 483a.)

Appellants agree that Congress intended non-Indian lands located within an Indian irrigation project to have access to the project. But they argue that Congress has not authorized expenditures, such as the Allers lateral, that benefit *solely* a non-Indian. A Bureau irrigation expenditure may benefit solely Indians, or it may benefit Indians and non-Indians alike by improving the communal segments of the project. But Bureau officials have no authority, appellants claim, to expend money for the sole benefit of non-Indians.

When it sought the 1964 and 1965 appropriations, the Bureau indicated that some of the funds would be expended on noncommunal elements of irrigation projects. Included in its requests were funds for "laterals, land clearing and leveling"—undertakings which, when viewed individually, benefit only one or a few parcels of land. There is no suggestion in the history of the appropriation bills, or in the statutory scheme relating to irrigation projects in general,

that Congress intended noncommunal expenditures to be administered differently for Indian beneficiaries than for non-Indian beneficiaries. Appellants have not argued to the contrary. Their claim is based on 25 U.S.C. § 13, which provides general authorization for the Bureau to expand moneys:

"The Bureau of Indian Affairs, under the supervision of the Secretary of the Interior, shall direct, supervise, and expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians throughout the United States for the following purposes:

" * * *

"For extension, improvement, operation, and maintenance of existing Indian irrigation systems and for development of water supplies."

 We do not read section 13 as requiring that every individual irrigation expenditure be "for the benefit, care, and assistance" of Indians. That interpretation would present federal courts with the unenviable task of reviewing individual Bureau expenditures and speculating in each instance about potential beneficiaries.[11] Congress has

---

and operating charges, because of inability to operate such lands profitably by reason of lack of fertility of the soil, inadequacy of water supply, defects of irrigation works, or for any other causes."

Appellants argue that § 389 refers only to charges that arose when the land was Indian-owned, but that are now owned by a non-Indian purchaser. *Cf.* 80 Cong. Rec. 4482 (March 27, 1936) (remarks of Senator O'Mahoney). A full reading of the legislative history does not support this interpretation. The section was designed to ensure "that the owners of both lands [Indian and non-Indian] should be dealt with on the same basis," and only in "some instances" were the charges ones that accrued while the land was held by an Indian. H.R. Rep. No. 2369, 74th Cong., 2d Sess. (1936) 1, 2; *see also* S.Rep. No. 1715, 74th Cong., 2d Sess. (1936).

10. 25 U.S.C. § 386a provides in part:
"The Secretary of the Interior is hereby authorized and directed to ad-

just or eliminate reimbursable charges of the Government of the United States existing as debts against individual Indians or tribes of Indians in such a way as shall be equitable and just in consideration of all the circumstances under which such charges were made: *Provided,* That the collection of all construction costs against any Indian-owned lands within any Government irrigation project is hereby deferred, and no assessments shall be made on behalf of such charges against such lands until the Indian title thereto shall have been extinguished, and any construction assessments heretofore levied against such lands in accordance with the provisions of section 386 of this title, and uncollected, are hereby canceled * * *."

11. The Government has argued that even the Allers expenditure benefits Indians: The value of Indian-owned land is increased because a non-Indian purchaser might have a lateral built at Government

not instructed us to undertake this task, in clear terms or otherwise. Section 13 authorizes expenditures for Indian irrigation projects, and the Pala project, viewed as a whole, is operated for the benefit and assistance of Indians. (At least, there is no claim to the contrary.) The Allers expenditure extends and improves the Pala project, and therefore is authorized by section 13. If Congress had wanted to impose on the Bureau the restrictions urged by appellants, it could have done so easily. Similar restrictions have been made by Congress on educational expenditures by the Bureau. (25 U.S.C. §§ 288, 289, 297.) But we cannot imply from section 13 these restrictions on irrigation expenditures. We must conclude that the individual officials did not act outside their statutory authority in approving the Allers expenditure.

 We also reject appellants' claim that the expenditure was an unconstitutional taking of funds held in trust for Indians. The funds in question were "gratuitous appropriations of public moneys"; they were not treaty or tribal funds "belonging really to the Indians" and held in trust by the United States. (Quick Bear v. Leupp (1908) 210 U.S. 50, 81, 28 S.Ct. 690, 52 L.Ed. 954.) Use of public moneys to benefit non-Indians is not a taking of Indian property. Consequently, sovereign immunity bars the claim against the individual officials, even if their actions were tortious or the outcrop of bad judgment. (Larson v. Domestic & Foreign Commerce Corp. (1949) 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628; Turner v. Kings River Conservation District (9th Cir. 1966) 360 F.2d 184, 196 n. 19.)[12]

## II.

Appellants' final claims concern reimbursement charges arising out of the Allers expenditure. The Bureau has stated its intention of treating the expense of the lateral as a reimbursable cost, allocable on a per-acre basis against all irrigable land within the Pala project. (25 C.F.R. § 211.4a(a).) Appellants sought injunctive and declaratory relief, contending that the imposition of such charges was both unauthorized and an unconstitutional taking without just compensation.

 The district court held that it had no jurisdiction to hear these claims as asserted by appellant Scholder and the individual Indian allotment holders whom he represents. We think otherwise. As we said earlier in discussing 25 U.S.C. § 345, that section is not limited to actions seeking to compel the issuance of an allotment in the first instance. It serves also to protect "the interests and rights of the Indian in his allotment or patent after he has acquired it." (United States v. Pierce, *supra*, 235 F.2d at 889.) Irrigation construction charges levied against Indian land are not collectible until after the Indian title to the land has been extinguished. At that time the deferred charges are immediately collected. (25 U.S.C. § 386a; 25 C.F.R. 6 211.4a(b).) The deferred charges amount to a lien on the Indian's allotment, reducing its sale value. (*See* 25 C.F.R. § 211.2) The imposition of construction charges affects an Indian's "interests and rights" to his allotment, and he can challenge the validity of charges under section 345.

 We remand this phase of the case to the district court for a determination of the validity of the charges. The issue was not fully examined below, in part because those appellants who had a day in court (the Pala and Rincon Bands) did not emphasize this aspect

expense. We repeat this argument, not to suggest that we think it persuasive but to show that speculation is often required in determining who benefits from a particular expenditure.

12. Appellants had also alleged that Bureau officials made an unauthorized agreement

with Allers that he would be given a lateral if he purchased the land in question. The district court found that no such agreement was made. Neither party has disputed the appropriateness of this case for summary judgment.

of the case. Undoubtedly the issue is of more concern to the individual allotment holder than it is to the Bands. The issue was not fully briefed before this court. The appellees failed to direct our attention to any authorization for the imposition of the charges, pointing instead to statutes authorizing the assessment of construction charges *where reimbursement is authorized.*[13]

## III.

We feel obliged to add that the Bureau's conduct, as reflected by the record before us, borders on the shocking. At best, it reflects gross insensitivity. The United States has a high moral obligation to the American Indian, and Congress has entrusted the officials of the Bureau of Indian Affairs with the responsibility of meeting that obligation. We have no doubt that the Bureau failed to meet its responsibility in the instant case. Over 45 percent of the Indian acreage within the Pala project is without functioning laterals. The area is naturally very arid. In past years Indian landowners, as well as representatives of the Pala Band, have made numerous requests to the Bureau for the construction and repair of laterals, and the Bureau's uniform response was that no moneys were available. The former owners of the Allers property were Pala Indians, and they were forced to give up the allotment after their fruit trees died for lack of water. Their requests to the Bureau for repair of the lateral were refused, and the land was completely without water. Yet shortly after Allers, a non-Indian, purchased the property, the Bureau agreed to build a lateral that would benefit solely his land. At the time the briefs for this appeal were filed, the Bureau had approved no other laterals in the Pala project.

Perhaps there are exceptional circumstances that justify the Bureau's expeditious handling of the Allers request while, temporarily at least, bypassing the requests of Indian residents of years' standing. If so, they have never been revealed to the understandably indignant Indians within the project.[14] It is hardly surprising that the Bureau's actions have inspired a lawsuit. Its officials should find no satisfaction in our conclusion that, after two years of costly litigation, sovereign immunity shields their decision from judicial scrutiny.

---

13. 25 U.S.C. §§ 385, 386. Section 386 is a directive to the Secretary of the Interior to start collection of construction charges "where reimbursement is required by law." Section 385 authorizes the fixing of maintenance charges for Indian projects, but its authorization for the apportionment of construction charges is limited to those charges "made reimbursable out of tribal funds." (The section actually refers to apportionment of "the cost of any irrigation project constructed for Indians * * *." The Department of the Interior has taken this as referring to construction charges. Opinion of the Solicitor (Sept. 9, 1929) 52 I.D. 709, 712.) The parties agree that the Allers lateral is a construction cost, rather than a maintenance or operating cost. *Cf.* Opinion of the Solicitor (Aug. 17, 1945) 59 I.D. 92. There is no mention of reimbursement in the 1964 and 1965 appropriation bills; specific language found in earlier bills requiring reimbursement is entirely lacking. *Compare, e. g.,* Act of March 2, 1934, Pub.L. No. 109, 48 Stat. 362, 370.

14. The Government has offered reasons, but they are far from compelling. First, the Government states that Allers' was the only "timely" request, in that his was made after the 1964 appropriation while those of the Indians were made prior to the appropriation. Thus, the Bureau would place on the Indians the burden of keeping a continually watchful eye on congressional appropriations. That is the Bureau's job. And, to our mind, it is the Bureau's job to give just consideration to requests that anticipate an appropriation, rather than to ignore them.

Second, the Government suggests that Allers was deserving of special treatment because when he purchased his property Allers paid $1280.47 in deferred irrigation charges that had accumulated on the land. But payment of the deferred charges is required by statute (25 U.S.C. § 386a) and represents a proportional share of extant project; it does not entitle the purchaser to special privileges respecting new expenditures.

The judgment is affirmed in part and reversed in part, and the cause is remanded to the district court for proceedings consistent with the views herein expressed.