Albert PINKHAM, Sr.; Cyrus Wilkinson; Connie Allen Moore; Francis Allen, Plaintiffs–Appellants,

v.

LEWISTON ORCHARDS IRRIGATION DISTRICT, and United States of America,* Defendants–Appellees.

No. 87–3703.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided Nov. 29, 1988.

---

* Pursuant to the parties' stipulation, the United States has been dismissed from the appeal.

Mary Linda Pearson, Lewiston, Idaho, for plaintiffs-appellants.

Robert D. Lewis, Cantrill, Skinner, Sullivan & King, Boise, Idaho, for defendants-appellees.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Albert Pinkham and other Indian plaintiffs appeal the district court's dismissal of their action against Lewiston Orchards Irrigation District for lack of subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1353. We affirm.

## FACTS

Plaintiffs are enrolled members of the Nez Perce Tribe of Indians and beneficial owners of an undivided share of allotted land held in trust by the United States on the Nez Perce Indian Reservation of Idaho. According to their second amended complaint, plaintiffs brought an action for damages caused by the flooding of water onto plaintiffs' allotted land in April 1959, and again around April 24, 1984. These alleged floods occurred because a canal carrying water across plaintiffs' allotted land broke. The canal is owned by the United States, and used and maintained by Lewiston Orchards Irrigation District (LOID). Plaintiffs alleged that defendants "have been grossly negligent in the construction and maintenance of the [LOID] canal bisecting Plaintiffs' land, in a manner amounting to outrageous conduct." The complaint added that "there has been a trespass upon Plaintiffs' land which has effectively acted as a taking of said land without just compensation within the meaning of the Fifth Amendment." The complaint concluded that "[a]s a result and proximate cause of defendants' gross negligence and outrageous conduct, Plaintiffs have been injured in their property in an amount in excess of $10,000.00, with damages to be proven at trial." Plaintiffs asserted that the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1353.

The United States and LOID separately filed a motion to dismiss for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The district court granted the mo-

tions and subsequently denied plaintiffs' motion to reconsider. Plaintiffs timely appeal. The United States has since been dismissed from the appeal.

### ANALYSIS

■ Subject matter jurisdiction presents a question of law, which we review *de novo*. *Peter Starr Prod. Co. v. Twin Continental Films*, 783 F.2d 1440, 1442 (9th Cir.1986). Plaintiffs maintain that the district court had jurisdiction to hear an action brought by Indian allottees to protect their allotments. They contend that the floodings have made portions of their allotment no longer usable for farming and pasture, thereby effectively denying or excluding them from their right to possess and use their trust allotment. LOID responds that because this case does not involve a right to an allotment or the ownership rights and interests of the Indian allottees appurtenant to their allotment, the district court properly dismissed the complaint. The mere fact that the damage happened to allotted land, LOID contends, is insufficient to give rise to federal jurisdiction.

Title 28 U.S.C. § 1353 provides, in relevant part:

> The district court shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.

Plaintiffs specifically draw our attention to a related provision, which is part of the General Allotment Act:

> All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto

in the proper district court of the United States[.]

25 U.S.C. § 345.

The Supreme Court has reasoned that section 345 grants district courts subject-matter jurisdiction over two types of cases: "suits seeking the issuance of an allotment ... and suits involving 'the interest and rights of the Indian in his allotment or patent after he has acquired it.'" *United States v. Mottaz*, 476 U.S. 834, 845, 106 S.Ct. 2224, 2231, 90 L.Ed.2d 841 (1986) (quoting *Scholder v. United States*, 428 F.2d 1123, 1129 (9th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970)); *see also Christensen v. United States*, 755 F.2d 705, 707 (9th Cir.1985), *cert. denied*, 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986). The issue before us is thus whether the plaintiffs' allegations, which essentially amount to a tort, involve the interests and rights of the plaintiffs in their allotment after they acquired it, thereby giving rise to subject-matter jurisdiction under section 345. Although plaintiffs draw our attention to various cases in which jurisdiction was recognized over matters affecting Indian rights in an allotment, none involved tort actions in federal court for damages to allotted land caused by a defendant's alleged negligent conduct.

Plaintiffs rely heavily on *Loring v. United States*, 610 F.2d 649 (9th Cir.1979), in which an Indian community brought suit against the United States and a city, claiming, *inter alia*, that a right-of-way over their land was obtained fraudulently. The district court dismissed the action for want of subject-matter jurisdiction. We affirmed the dismissal of the United States because the claim was barred by the statute of limitations. *Id.* at 650. As to the city, we reversed, holding that federal jurisdiction existed under 25 U.S.C. § 345 and 28 U.S.C. § 1353. *Id.* at 651. We reasoned that section 345 was not limited to actions seeking to compel the issuance of an allotment in the first instance, but also served to protect the interests and rights of an Indian in his allotment after he acquired it. *Id.* at 650.

In contrast to plaintiffs' claim here, however, the claim in *Loring* did not sound in tort. Instead, it arose under federal statutes and regulations that specifically protected Indian allotments against improvident grants of rights-of-way. Because such provisions "gave rise to rights appurtenant to the allotted lands," federal jurisdiction under sections 345 and 1353 existed "to entertain an action brought to preserve these rights." *Id.* at 651. An essential element in *Loring* was thus preservation of the Indian's ownership of the allotted lands and rights appurtenant to the allotment. The consequential damages caused by LOID's alleged negligence and tortious invasion does not amount to rights appurtenant to the plaintiffs' allotted land. Contrary to plaintiffs' contentions, *Loring* is not the most analogous to the present controversy. *Loring* cannot stand for the proposition that the district court has federal jurisdiction over plaintiffs' tort action for damages due to flooding on their allotted lands.

Another case relied upon by plaintiffs, *Big Spring v. United States Bureau of Indian Affairs,* 767 F.2d 614 (9th Cir.1985), *cert. denied,* 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986), likewise involved rights and interests that were appurtenant to the Indians' allotted lands. Plaintiffs also fail to understand that *Big Spring's* discussion of section 345 was in the context of the government's sovereign immunity. In *Big Spring,* members of an Indian tribe brought an action against the tribe and the United States alleging that mineral rights in their allotments were wrongfully reserved for the tribe. Because the statute of limitations for civil actions commenced against the government barred the claims and because the tribe was immune from suit, we affirmed the district court's dismissal for want of jurisdiction. *Id.* at 617–18.

Before reaching that conclusion, we discussed the government's sovereign immunity, reasoning that section 345 "is not limited to actions to compel issuance of an allotment; it permits actions to define or protect an allotment once issued." *Id.* at 616. Because plaintiffs' claims sought to compel issuance of missing mineral rights appurtenant to their allotment, the court held that "section 345 applies in this case to waive the United States' sovereign immunity." *Id.* This holding in *Big Spring* has recently been upset by the Supreme Court. In *Mottaz,* the Supreme Court made clear that section 345 waives the government's immunity only with regard to these cases seeking an original allotment, and not those involving the interests and rights in an allotment after it has been acquired. 476 U.S. at 845–46, 106 S.Ct. at 2231–32.[1] Moreover, *Big Spring* did not involve a tort action and limited section 345's reach to rights appurtenant to an allotment.

The other cases relied upon by the plaintiffs also involved rights related to ownership of title, or other rights appurtenant to title in allotted land. *See Christensen,* 755 F.2d at 707 (involving suit against United States for failure to provide right-of-way access over federal land to landlocked allotment); *United States v. Pierce,* 235 F.2d 885, 887 (9th Cir.1956) (involving suit for equalization of allotments, payment of income from withheld allotments, and apportionment of tribal waters); *Gerard v. United States,* 167 F.2d 951, 951 (9th Cir.1948) (involving suit to establish title held by Indians under trust patents issued to them on land previously allotted); *Begay v. Albers,* 721 F.2d 1274, 1277–78 (10th Cir.1983) (involving suit to cancel forged deeds purporting to convey fee title in allotments to non-Indians).

Of critical importance in deciding whether jurisdiction exists under section 345 for protection of interests appurtenant to the allotment are the claims advanced by plaintiffs. In *Scholder v. United States,* 428 F.2d 1123 (9th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970), plaintiffs brought an action to enjoin the

---

1. Specifically, the Supreme Court reasoned that "to the extent that section 345 involves a waiver of federal immunity, as opposed to a grant of subject-matter jurisdiction, that section 'authorizes, and provides governmental consent for, only actions *for* allotments.'" *Mottaz,* 476 U.S. at 846, 106 S.Ct. at 2232 (quoting *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 142, 92 S.Ct. 1456, 1466, 31 L.Ed.2d 741 (1972)) (emphasis in *Mottaz* ).

Interior Secretary and Bureau of Indian Affairs from spending Indian irrigation project funds for the benefit of a non-Indian owner of land situated within an irrigation district. To support the reasoning that section 345 extends to suits designed to protect or preserve an allotment once issued, we cited *United States v. Pierce*, 235 F.2d 885 (9th Cir.1956). *Scholder*, 428 F.2d at 1126. We were careful to add, however, that *Pierce's* reasoning must be read "in the context of the claims advanced in *Pierce*: equalization of allotments, payment of income from withheld allotments, and apportionment of tribal waters." *Id.*

As to the issue of the Bureau's decision to expend funds, we concluded in *Scholder* that the consent given by the government to be sued in section 345 did not encompass the plaintiffs' challenge to the expenditure.[2] We distinguished *Pierce*, reasoning that plaintiffs were "not claiming denial of a right acquired appurtenant to their allotment." *Id.* The second issue before us involved reimbursement charges arising out of the expenditures, which were to be allocated on a per-acre basis against all irrigable land within the project. *Id.* at 1129. We reasoned:

> Irrigation construction charges levied against Indian land are not collectible until after the Indian title to the land has been extinguished ... The deferred charges amount to a lien on the Indian's allotment, reducing its sale value.

*Id.* Because the imposition of these charges affected the Indians' interests and rights to their allotment, we concluded that the plaintiffs could challenge the validity of the charges under section 345. *Id.*

 As in the first issue in *Scholder*, the claims advanced by plaintiffs here do not involve the denial of rights appurtenant to their allotment. Plaintiffs' allegations of tortious conduct simply cannot be construed as an action to protect or preserve an allotment once issued, or to determine rights appurtenant to an allotment.[3] Instead, it is a negligence claim for damages from flood waters trespassing onto their allotted land.[4] Because section 345, and its companion provision 28 U.S.C. § 1353, provide no subject-matter jurisdiction for such

---

2. As with *Big Spring*, discussed *supra*, we note that *Scholder* discussed § 345 in the context of whether the United States had waived its sovereign immunity. *Scholder* reasoned that § 345 was a limited consent by the United States to be sued. 428 F.2d at 1126. The court reasoned further: "Section 345 consent is not restricted to suits to compel the issuance of an allotment in their first instance. It extends consent at least to certain kinds of suits designed to protect or preserve an allotment once issued." *Id.* The Supreme Court in *Mottaz* has repudiated such reasoning by concluding that § 345 waives the government's immunity only with respect to suits seeking the issuance of an allotment, and not suits involving the interests and rights of an Indian in his allotment after it has been acquired. 476 U.S. at 845–46, 106 S.Ct. at 2231–32. Nonetheless, the Supreme Court quoted *Scholder* in *Mottaz* for the proposition that § 345 grants district courts subject-matter jurisdiction over suits involving an Indian's interests and rights in his allotment after he has acquired it. *See id.* at 845, 106 S.Ct. at 2231. In addition, we have cited *Scholder* for the proposition that § 345 gives federal courts jurisdiction to "protect, preserve, or define an allotment." *Christensen*, 755 F.2d at 707. As a result, *Scholder's* reasoning can still be applied in ascertaining whether the district court had subject-matter jurisdiction over the action against LOID.

3. We do not hold that tortious conduct, as a matter of law, is necessarily unable to implicate rights appurtenant to an allotment under section 345. But plaintiffs' contention that the two alleged floods at issue in this case amount to a denial of equitable title, for instance, is wholly insubstantial and obviously frivolous. *See* note 5, *infra*.

4. The Eighth Circuit recently discussed jurisdiction over trespass actions under section 345. In *United States v. Turtle Mountain Housing Authority*, 816 F.2d 1273 (8th Cir.1987), an Indian plaintiff, who was the successor in title and interest of an allotment, brought a trespass suit against a housing authority alleging that the authority interfered with her use of the property. The plaintiff maintained that the defendant had constructed units on part of her allotment without her permission. The district court dismissed the complaint for lack of subject-matter jurisdiction. The Eighth Circuit affirmed, holding, *inter alia*, that "[t]he complaint seeking relief for trespass does not state a claim contemplated by section 345, and [therefore] cannot serve here as grounds for federal question jurisdiction." *Id.* at 1275. Similarly, plaintiffs' action here is, in part, for trespass of their land by flood waters. Hence, section 345 does not grant jurisdiction over such an action.

a tort claim, we affirm the district court's dismissal.[5]

CONCLUSION

The Supreme Court has construed section 345 to allow federal jurisdiction over suits by Indian allottees concerning their rights and interests to an allotment after it has been acquired against parties other than the United States. *Mottaz,* 476 U.S. at 845–46, 106 S.Ct. at 2231–32. The plaintiffs' complaint is properly characterized as one for consequential damages caused by alleged negligence and tortious invasion of their property. Because such claims are not related to the ownership of title, or any rights appurtenant to allotment, we affirm the district court's dismissal for lack of subject-matter jurisdiction under 28 U.S.C. §§ 1353, 1331 and 25 U.S.C. § 345.

AFFIRMED.

---

**5.** An allotment action under section 345 does not require the defendant to be a state actor. "In fact, § 345 has been used by Indians to sue parties other than the United States to quiet title to land originally given under various allotment schemes." *Mottaz,* 476 U.S. at 846 n. 9, 106 S.Ct. at 2231 n. 9. By contrast, in order to allege jurisdiction under 28 U.S.C. § 1331 for a takings claim, the taking must be fairly attributable to state action. *See San Francisco Arts & Athletics v. Olympic Committee,* 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (Fifth Amendment applies only to governmental actors). As LOID is the only remaining defendant, section 1331 provides jurisdiction only if LOID is a state actor. But plaintiffs do not allege that LOID is a state actor. "Defendant [LOID], is an Idaho association created pursuant to the laws of Idaho...." Consequently, section 1331 cannot be said to provide a basis for subject matter jurisdiction, and the district court was correct to dismiss on that basis.

We would still dismiss for lack of subject-matter jurisdiction even if, *arguendo,* plaintiffs had properly pleaded an inverse condemnation against LOID as a quasi-governmental entity under the fourteenth amendment. The fifth amendment's proscription against takings without just compensation is made applicable to the states by the fourteenth amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980); *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978); *Chicago, B. & Q. R.R. Co. v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 585, 41 L.Ed. 979 (1897).

To constitute a compensable taking by inverse condemnation where no permanent flooding of land is involved, proof of *frequent* and *inevitably recurring* inundation due to governmental action is required. *See United States v. Cress,* 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917); *Accardi v. United States,* 599 F.2d 423, 429, 220 Ct.Cl. 347 (1979); *Barnes v. United States,* 538 F.2d 865, 870, 210 Ct.Cl. 467 (1976); *Hartwig v. United States,* 485 F.2d 615, 620, 202 Ct.Cl. 801 (1973); *National By-Products, Inc. v. United States,* 405 F.2d 1256, 1273, 186 Ct.Cl. 546 (1969); *see also PDTC Owners Ass'n v. Coachella Valley County Water Dist.,* 443 F.Supp. 338, 341 (C.D.Cal.1978). Government-induced flooding not shown to be inevitably recurring occupies the category of mere consequential injury or tort. *Barnes,* 538 F.2d at 870; *see also Singleton v. United States,* 6 Cl.Ct. 156, 162 (1984).

The two floodings alleged by plaintiffs in their complaint are plainly insufficient to amount to a constitutional taking. *See Fromme v. United States,* 412 F.2d 1192, 1196, 188 Ct.Cl. 1112 (1969) (recognizing that "two floodings ... cannot be regarded as a taking of a permanent interest of the affected land"); *National By-Products,* 405 F.2d at 1273 (reasoning that "one, two or three floodings by themselves do not constitute a taking"); *see also Singleton,* 6 Cl.Ct. at 162–63. Nowhere does plaintiffs' complaint allege that a flood of the type that injured their property in April 1959 and April 1984 would recur frequently and inevitably. Accordingly, plaintiffs' complaint is wholly insubstantial in alleging a constitutional taking so as to confer federal subject-matter jurisdiction.

Ordinarily, district courts will assume jurisdiction if a complaint alleges that a governmental body has taken property without just compensation in violation of the fifth and fourteenth amendments. *See Mosher v. City of Phoenix,* 287 U.S. 29, 31–32, 53 S.Ct. 67, 68, 77 L.Ed. 148 (1932). However, district courts lack jurisdiction over such actions when the claim is wholly insubstantial, i.e., when the unsoundness of the claim is so plainly apparent from previous decisions that the subject is foreclosed. *Hagans v. Lavine,* 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *see also PDTC Owners Ass'n,* 443 F.Supp. at 340–41 (involving an alleged taking under the fifth and fourteenth amendments).