**1274**

Joanne BEGAY, Appellee,

United States of America, Appellee,

v.

Betty R. ALBERS, R.E. Albers, Vera A. Albers, Sharon Albers (Fuller) Robinson, Rebecca Claire Albers, Imogene Albers, Unknown Heirs of R.E. Albers, deceased, Unknown Heirs of Vera A. Albers, deceased, Unknown Heirs of William B. Albers, deceased, Appellants.

ETH–KA–NES–PAH (Mrs. Cecil Navajo), Appellee,

United States of America, Appellee,

v.

Betty R. ALBERS, R.M. Albers, Imogene Albers, Betty R. Albers (as trustee for Sharon Albers Robinson [formerly Sharon Albers Fuller], Rebecca Claire Albers and William Alan Albers), Sharon Albers Robinson (formerly Sharon Albers Fuller), Rebecca Claire Albers, and William Alan Albers, Appellants.

ETH–KA–NES–PAH (Mrs. Cecil Navajo), Appellant,

v.

Betty R. ALBERS, R.M. Albers, Imogene Albers, Betty R. Albers, Betty R. Albers (as trustee for Sharon Albers Robinson [formerly Sharon Albers Fuller], Rebecca Claire Albers and William Alan Albers), Sharon Albers Robinson, (formerly Sharon Albers Fuller), Rebecca Claire Albers, and William Alan Albers, Appellees.

Nos. 81–1926, 83–1210 and 83–1376.

United States Court of Appeals,
Tenth Circuit.

Nov. 14, 1983.

Paul E. Frye, DNA-People's Legal Services, Inc., Window Rock, Ariz., and Wayne H. Bladh, Asst. Atty. Gen., Santa Fe, N.M. (William L. Lutz, U.S. Atty., and Herbert A. Becker, Asst. U.S. Atty., Albuquerque, N.M., with them on briefs), for Begay, Navajo, and U.S.

Russell Moore, Albuquerque, N.M. (Phil Krehbiel, Robert H. Clark, and Clyde F. Worthen, Albuquerque, N.M., with him on briefs), Keleher & McLeod, P.A., Albuquerque, N.M., for Albers.

Before HOLLOWAY, BARRETT and MILLER *, Circuit Judges.

BARRETT, Circuit Judge.

In these consolidated appeals, the primary questions are whether the District Court had jurisdiction over the actions brought by plaintiffs, Indian allottees, to cancel certain deeds which were forged, purporting to convey fee title in their respective 160-acre allotment tracts, approved by the Department of the Interior, and whether the court erred in granting judgment for the plaintiffs-appellees (for convenience hereafter referred to as Begay and Mrs. Cecil Navajo) that plaintiffs recover possession and beneficial title to their allotments, subject to the interest of the United States as trustee, concurrent with plaintiffs' conveyance to defendants-appellants, Betty R. Albers, et al. (Albers), of the lands originally exchanged for the allotment tracts. A summary recitation of relevant facts will place the issues in focus.

---

* Honorable Jack R. Miller, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

Prior to 1946, both Begay and Mrs. Cecil Navajo received patents, in trust through the United States, to 160-acre tracts of land in McKinley County, New Mexico, pursuant to the General Allotment Act, 25 U.S.C. § 331, et seq. (1976). The allotment tracts were located in a checkerboard area where ownership alternated between non-Indian, Indian fee land, Indian trust land, Tribal land, and state and federal government land. Proposals to effect large scale exchanges of these lands were advanced and actively pursued in the 1940's in order to effect consolidation of ownership and to lessen the tensions which had existed by reason of trespasses. In order that the conveyance of restricted Indian lands could be effected, the Department of the Interior, on May 26, 1945, advised that before the exchange of lands of equal value could be made, the individual Indian allottee must personally consent thereto or, if a minor, through a natural guardian, pursuant to the act of June 30, 1932 (47 Stat. 474).[1] [Plaintiff's Exhibit 8, Vol. III, No. 81–1926; Plaintiff's Exhibit T, Vol. VII, No. 83–1210].

Pursuant to said instructions, deeds were thereafter executed purporting to convey the Begay restricted lands to Hazel W. Prewitt. [Plaintiff's Exhibit 6, Vol. III, No. 81–1926]. In regard to the conveyance by Mrs. Cecil Navajo, a deed to Betty R. Albers was executed on October 29, 1946, purportedly bearing Mrs. Navajo's thumbprints. [Plaintiff's Exhibit 72, Vol. VI, No. 83–1210].

The United States of America was joined as a party defendant in both actions. In Begay's case, she alleged that the exchange deeds are forgeries in that she did not execute same and that she has not at any time requested, authorized, consented to or ratified the conveyance of her allotment to any person. In Mrs. Navajo's case, she alleged that the exchange deed of October 29, 1946, is a forgery in that it does not contain her thumbprint (she can neither read or write) and that she has not, at any time, knowingly and voluntarily consented to the deed of her allotment.

In both cases, the plaintiffs sought relief, inter-alia, of cancellation of the deeds purporting to convey their allotment lands, recovery of possession thereof, quieting title as to their beneficial title subject only to the interest of the United States as trustee and damages representing rental value of the allotment lands from which they allege to have been wrongfully deprived possession. Both plaintiffs were denied damages for the use of their allotment lands, on the ground that each had the use of the exchange lands and did not detail [prove] damages. The Memorandum Opinion in Begay's case was entered by Judge E.L. Mechem on June 18, 1981. Final judgment was entered July 17, 1981. The Memorandum Opinion in Mrs. Cecil Navajo's case was entered by Chief Judge Howard Bratton on December 9, 1982. Final judgment was entered January 25, 1983.

1. AN ACT

Relating to the acquisition of restricted Indian lands by States, counties, or municipalities.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Act entitled "An Act to relieve restricted Indians in the Five Civilized Tribes whose nontaxable lands are required for State, County, or municipal improvements or sold to other persons, and for other purposes," approved March 2, 1931, is amended to read as follows:

"That whenever any nontaxable land of a restricted Indian of the Five Civilized Tribes or of any other Indian tribe is sold to any State, county, or municipality for public-improvement purposes, or is acquired, under existing law, by any State, county, or municipality by condemnation or other proceedings for such public purposes, *or is sold under existing law to any other person or corporation for other purposes, the money received for said land may, in the discretion and with the approval of the Secretary of the Interior, be reinvested in other lands selected by said Indian, and such land so selected and purchased shall be restricted as to alienation, lease, or incumbrance, and nontaxable in the same quantity and upon the same terms and conditions as the nontaxable lands from which the reinvested funds were derived, and such restrictions shall appear in the conveyance.*" [Emphasis supplied].

Approved, June 30, 1932.

On appeal, defendants-appellants advance three common contentions of trial court error, to-wit: (1) in finding that it had subject matter jurisdiction over the cases; (2) in failing to find and hold that the approval by the United States of the Begay and Navajo conveyances in the exchange relieved the subject Indian allotment lands of restrictions against alienation imposed by statute, and (3) in failing to find/hold that the New Mexico law of adverse possession does not apply to the subject allotment lands so as to bar the Begay and Mrs. Cecil Navajo claims and entitles defendant-appellant Albers to possession of the allotment lands. Appellant Albers in the Mrs. Cecil Navajo case contends that the trial court imposed an unconstitutional burden of proof upon her. In addition, appellee Mrs. Cecil Navajo appeals from the trial court's denial of her claim for damages pursuant to 25 U.S.C. § 179. She contends that the trial court erred in "setting-off" the use of the lands received in the exchange for the allotment lands.

### I.

Appellants contend that the trial court erred in finding/concluding that it had subject matter jurisdiction under 25 U.S.C. § 345 [2] and 28 U.S.C. § 1331.[3]

■ Appellants argue that these consolidated cases are actions to set aside allegedly forged deeds and to quiet title in plaintiffs and that these are clearly not actions against the United States to establish an allotment, inasmuch as plaintiffs received their allotments. Appellants contend that

because the plaintiffs have not challenged the allotments, but rather the alleged invalid transfer of the allotments, § 345 jurisdiction does not exist. We disagree. We hold that the district court did not err in finding subject matter jurisdiction pursuant to § 345, *supra.*

The appellants contend that the approval of the forged deeds by the Secretary of the Interior in the exchanges validly terminated the trust status existing between the Indian allottees and the United States in relation to the exchanged lands, and, furthermore, the Secretary had the power to terminate the trust status without the consent of the allottees, Begay and Mrs. Cecil Navajo.

25 U.S.C. § 194 (1976) allows an Indian a presumption of title "from the fact of previous ownership or possession" and imposes the burden of proof in a land dispute between an Indian and non-Indian on the latter. In each of these cases, Begay and Mrs. Cecil Navajo established their ownership in the allotment lands by virtue of the patents issued to them in trust by the United States. *See Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979).

*Vicenti v. United States,* 470 F.2d 845 (10th Cir.1972), *cert. dismissed,* 414 U.S. 1057, 94 S.Ct. 561, 38 L.Ed.2d 343 (1973), involved a suit by individual Navajos who were issued allotments. In 1949, the Bureau of Indian Affairs prevailed upon the Navajos, or their predecessors, to surrender their allotments in exchange for lieu lands. The Navajos were thereafter removed from

**2.** 25 U.S.C. § 345 provides in relevant part:
Actions for Allotments
All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, *or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States;* and said district courts are given jurisdiction to try

and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant). [Emphasis supplied].

**3.** 28 U.S.C. § 1331 provides:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

their allotment lands, as improved, into other areas. The majority of the Navajos who surrendered their allotments did not, however, receive lieu (exchange) lands. The district court ruled that it had jurisdiction under 25 U.S.C. §§ 345 and 346 to entertain the Navajos' suit to clear any cloud on the title of the allotted lands, but that these statutes did not afford jurisdiction for recovery of damages against the United States because the United States had received no money in the exchange. This court affirmed. The trial court's judgment provided relief, *inter-alia*, (a) affording the Indian appellants immediate and exclusive use and enjoyment of the allotments, (b) vesting exclusive title in the allotments in appellants, and (c) declaring all prior relinquishments of the allotments executed by the appellants or their predecessors null and void. The Navajo plaintiffs appealed solely from the trial court's denial of their claim of money damages against the United States. While there was no issue of consent to the exchange in *Vicenti,* the trust relationship between the Indian allottees and the United States was paramount in reliance of jurisdiction under 25 U.S.C. §§ 345 and 346. This court there observed that the trial court "[n]oted particularly that it was 'regrettable' that there was no damage claim available to the appellants because either the Bureau of Indian Affairs, the Bureau of Land Management, or the Department of the Interior had allowed a 'cruel hoax' to be perpetrated against them." 470 F.2d at p. 847.

Appellants in these consolidated cases do not challenge the district court findings that the Begay and Mrs. Cecil Navajo deeds were forged and that Begay and Navajo did not otherwise consent to the exchange conveyances of their respective allotments. They insist, nevertheless, that the approval of the forged deeds by the Secretary of the Interior terminated the trust status between the United States and Begay and Navajo as allottees.

■ In *Jake v. Elkins,* No. 74–1180 (10th Cir. Unpublished Opinion, March 21, 1975), this court again reviewed an action brought by an Indian allottee to recover title and possession to an allotment on the ground that she (the allottee) did not consent to the conveyance of the allotment. Jurisdiction was there recognized under 25 U.S.C. § 345. Jake alleged that: she did not knowingly execute the deeds in question; that her thumbprints thereon were obtained by fraud; and that she had not consented to the exchange. The trial court found that Jake was estopped by virtue of the fact that she had discovered the alleged fraud within a period of time prior to running of New Mexico's ten year statute of limitations in cases where a defendant advances the defense of adverse possession. We remanded the case for further proceedings on the issue as to whether Jake had voluntarily executed the deeds. The trial court, following an evidentiary hearing on remand, found that Jake did execute the exchange deeds voluntarily and of her own free will. We then affirmed. Thus, in both *Vicenti* and *Jake,* this court held that conveyances of allotments in exchange agreement situations are not valid unless the allottee freely and voluntarily executes the deeds of conveyance. Thus, 25 U.S.C. § 345 is not limited, as appellants urge, to actions filed to compel the issuance of an allotment. The statute does, in the language of *Scholder v. United States,* 428 F.2d 1123, 1129 (9th Cir. 1970), serve "[a]lso to protect 'the interests and rights of the Indian in his allotment or patent after he has acquired it.' *Accord: Loring v. United States,* 610 F.2d 649 (9th Cir.1979); *Fontenelle v. Omaha Tribe of Nebraska,* 430 F.2d 143 (8th Cir.1970); *United States v. Pierce,* 235 F.2d 885 (9th Cir.1956); *Gerard v. United States,* 167 F.2d 951 (9th Cir.1948).

In *Jake,* the action was brought against the defendants in possession under claim of title by virtue of the exchange agreement and against the United States. Joinder of the United States was proper in that *unless* Jake had voluntarily consented to the conveyance of her allotment lands, the lands would not be relieved of the federal restrictions. We there observed that the Bureau of Indian Affairs' approval of the exchange deeds could not supply the requisite volun-

tariness on the part of the restricted Indian, regardless of whether the Indian allottee was benefited, citing to *Kendall v. Ewert,* 259 U.S. 139, 42 S.Ct. 444, 66 L.Ed. 862 (1922).

We are also persuaded that the district court did not err in ruling that it was vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This statute provides, *inter-alia,* that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. In our view, *Oneida Indian Nation of New York v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) supports the district court ruling. In *Oneida,* the action was brought by Indian nations seeking damages and right of possession of certain tribal lands ceded by the Indian nations without the consent of the United States. The plaintiffs alleged that the 1795 cession was ineffective to terminate the plaintiffs' possessory rights. The Court held that the complaint alleged a cause of action pursuant to 28 U.S.C. § 1331 in that the asserted right of possession is claimed under federal law.

This court held that the federal district court had jurisdiction under 28 U.S.C. § 1331 to determine whether a deed executed by an Indian allottee was valid in light of the restrictions imposed by the Congress. *Vinson v. Graham,* 44 F.2d 772 (10th Cir.1930), *cert. denied,* 283 U.S. 819, 51 S.Ct. 344, 75 L.Ed. 1435 (1930). The United States holds legal title to the allotted-patented land in trust for the Indians. Neither the United States nor an Indian tribe may be sued without congressional consent. *Cherokee Nation v. State of Oklahoma,* 461 F.2d 674 (10th Cir.1972). We hold that questions involving whether restrictions imposed by Congress upon Indian allotments have been removed so as to extinguish the Indian allottee's claim of equitable title are "federal questions" within the purview of 28 U.S.C. § 1331, even though state law defenses are available to defeat the Indian claims. In the instant consolidated cases, the district court applied New Mexico law with respect to proof of forgery and title by adverse possession in adjudicating the various claims.

## II. and III.

Appellants argue that the trial court erred in failing to find and hold that the approval by the United States of the Begay and Mrs. Cecil Navajo conveyances in the exchange relieved the subject Indian allotment lands of restrictions against alienation imposed by statute, or, alternatively that the New Mexico law of adverse possession establishes paramount title to the allotment in appellants.

The district court held that the Begay and Mrs. Cecil Navajo allotments were still held in trust by the United States, pursuant to the provisions of the General Allotment Act, 25 U.S.C. § 331, *et seq.* (1976). We agree.

25 U.S.C. § 348 specifically provides that upon allotments selected by the Indians (or the Secretary if an Indian so entitled fails to make a selection) effected under 25 U.S.C. § 332, and approved by the Secretary of the Interior, patents shall issue therefor in the names of the allottees which shall declare "[t]hat the United States does and will hold the land thus allotted, for the period of twenty-five years, *in trust for the sole use and benefit of the Indian to whom such allotment shall have been made* ... the President of the United States may in any case in his discretion extend the period." [Emphasis supplied]. Thus, title to Indian lands is held in trust by the United States, *United States v. Sutton,* 215 U.S. 291, 30 S.Ct. 116, 54 L.Ed. 200 (1909), and restrictions on alienation remain until a patent is issued carrying full and unrestricted title. *Monson v. Simonson,* 231 U.S. 341, 34 S.Ct. 71, 58 L.Ed. 260 (1913). The purpose of 25 U.S.C. § 348, *supra,* was to render it impossible for an Indian allottee to sell, convey or in anywise encumber trust lands during the continuance of the trusteeship. We observe that the trust period of 25 years was extended indefinitely by virtue of 25 U.S.C. § 462 enacted in 1934.

Under this statutory design, the United States is an indispensable party in any action determining a dispute arising over the possession of allotted land by virtue of its trust relationship and state courts do not have any jurisdiction over such disputes. *McKay v. Kalyton,* 204 U.S. 458, 27 S.Ct. 346, 51 L.Ed. 566 (1907). Questions of ownership of fee title to an Indian allotment involves the application of federal law. *Wilson v. Omaha Tribe, supra.*

 The record is clear that the Begay and Mrs. Cecil Navajo deeds of conveyance in the subject exchanges were forgeries, and that neither consented to the exchanges. Accordingly, because of the absence of consent by the allottees in the cases at bar, title remained in the United States in trust for Begay and Mrs. Cecil Navajo. Acts of Congress authorizing alienation of restricted Indian land must be construed in favor of the congressional policy to promote the welfare of the Indians as wards of the United States. *Drummond v. United States,* 131 F.2d 568 (10th Cir.1942).

25 U.S.C. § 350 provides:

The Secretary of the Interior is hereby authorized, in his discretion, and whenever for good and sufficient reason he shall consider it to be for the best interest of the Indians, in making allotments under the [statute aforesaid], to permit any Indian to whom a patent has been issued for land on the reservation to which such Indian belongs, under treaty or existing law, to surrender such patent with formal relinquishment by such Indian to the United States of all his or her right, title, and interest in the land conveyed thereby, properly indorsed thereon, and to cancel such surrendered patent: *Provided,* That the Indian so surrendering the same shall make a selection, in lieu thereof, of other land and receive patent therefor, under the provisions of the act of February eight, eighteen hundred and eighty-seven.

This statute and others heretofore referred to can only be construed as to allow the Secretary of the Interior "to permit" an Indian to surrender his or her patent for cancellation following his or her voluntary consent to selection of in lieu lands. We recognize that § 350 may not have application to land exchanges, as here, between Indian allottees and non-Indians. It does, however, just as does 25 U.S.C. § 464, which applies specifically to exchanges of trust lands, require "voluntary" exchanges. 25 U.S.C. § 464, in relevant part, provides:

[T]he Secretary of the Interior may authorize voluntary exchanges of lands of equal value and the voluntary exchange of shares of equal value whenever such exchange, in his judgment, is expedient and beneficial for or compatible with the proper consolidation of Indian lands and for the benefit of cooperative organizations.

25 U.S.C. § 404 also permits the Secretary of the Interior to approve the sale of allotted lands upon the petition of the allottee or the natural guardian in the case of infant allottees.

Inasmuch as neither Begay or Mrs. Cecil Navajo consented to the deeds of exchange, as required by law, the title to their allotment lands remained, as the trial court found, in the United States in trust for their use and benefit.

In *United States v. California,* 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947), the State of California claimed that the United States had forfeited ownership of a three-mile marginal belt along the coast by reason of the conduct of government agents which barred the United States from enforcing its rights by reason of the principles of laches, estoppel or adverse possession. The Supreme Court, in rejecting these contentions, held that, even assuming that Government agencies had been negligent in failing to assert [protect] the claims of the Government that "[T]he Government, which holds its interest . . . in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose

its valuable rights by their acquiescence, laches, or failure to act." 332 U.S. at p. 40, 67 S.Ct. at 1669. *See also United States v. City and County of San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940); *Jake v: Elkins, supra; McGannon v. Straightledge,* 32 Kan. 524, 4 P. 1042 (1884); Annot., 55 ALR 2d 554; 3 Am.Jur.2d, Adverse Possession, § 205.

In *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831) and *Choate v. Trapp,* 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941 (1912), the Supreme Court recognized that the United States Government, out of solicitude for the welfare of its Indian wards, undertook by Treaties, statutes and executive orders to establish legal relations to protect the Indian wards described as "a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith" which relationship "resembles that of a ward to his guardian." The trust obligations of that relationship were not abided by the United States when it approved the forged deeds of exchange in the cases of Begay and Mrs. Cecil Navajo. The forgeries rendered the deeds null and void. Without the consent of Begay and Mrs. Cecil Navajo to the conveyances, there was no termination of the trust relationship between the United States and these Indian wards. Furthermore, that relationship has never been abrogated by Congress. Nevertheless, appellant Albers contends that the district court imposed an unconstitutional burden of proof upon the defendants by applying the "presumption of title" inherent in 25 U.S.C. § 194, *supra.* Specifically, Albers contends that this presumption violates the concept of equal protection of the law "by arbitrarily favoring Indians over white persons." [Brief of Appellants, No. 83–1210, p. 35]. The Congress has plenary power over Indian lands and property in the exercise of its guardianship functions and this power has always been deemed a political power not subject to control by the judicial branch of government. *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *Warren Trading Post Co. v. Arizona Tax Commission,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965); *Lone Wolf v. Hitchcock,* 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

## IV.

Mrs. Cecil Navajo cross-appeals from the district court's denial of her claim for damages pursuant to 25 U.S.C. § 179 which provides that every person who drives or otherwise conveys any livestock to range or feed on land belonging to any Indian, without consent of the tribe, is liable to a penalty of $1 for each animal of such stock. The trial court denied this relief, finding that the predecessors of the defendants-appellants [Pruitts] were not implicated in the forgeries, that the plaintiffs had full use and benefit of the exchanged lands, and that there was no proof, with specificity, of damages allegedly suffered. We agree.

WE AFFIRM.