**E. Nedene WARDLE, et al.,
Plaintiffs-Appellants,**

v.

**NORTHWEST INVESTMENT COMPANY, et al., Defendants-Appellees.**

No. 85–5359 MN.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1986.

Decided Sept. 30, 1987.

---

Jeffrey T. Wallace, Cloquet, Minn., for plaintiffs-appellants.

Edward J. Shamaker, Washington, D.C., Dennis J. Seitz, Cloquet, Minn. and Danny R. Smeins, Britton, S.D., for defendants-appellees.

Before JOHN R. GIBSON, Circuit Judge, FAIRCHILD, Senior Circuit Judge,[*] and MAGILL, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Plaintiffs appeal from the judgment against them in their suit to establish their interest in land that originally had been an allotment to their Indian ancestor. We AFFIRM.

## I. FACTS

On September 26, 1893, pursuant to treaty, the United States conveyed by restricted patent to Adelaide Clark, an Indian of the Fond du Lac Band of the Chippewa Indians, approximately 80 acres of land in Carlton County, Minnesota. The patent provided that neither Clark nor her heirs could sell, lease or alienate the property without the consent of the President of the United States.

Clark died intestate on March 25, 1907. The heirs entitled to share in her allotment were her six children, including two minors, Clyde and Ned. Ned, born in 1905, was plaintiffs' progenitor. On April 15, 1916, a "Petition for Sale of Inherited Land" was filed by the heirs with the Office of Indian Affairs (OIA). It was supported by the sworn statements of five of the six heirs, one of which was also made on behalf of Ned. On May 6, 1916, OIA approved the petition, thereby authorizing offering the land for sale.

Reliable Investment Company, predecessor to defendant Northwest Investment Company, offered to purchase the property for $2,450.00. The adult heirs wished to accept, and filed a report so stating with the OIA, supported by their sworn statements; Earl O. Clark's statement was also made on behalf of Clyde and Ned. OIA responded that a deed approved by the President would be required, as well as the appointment of a guardian authorized to make the conveyance for the two minors. Thomas Jackson was subsequently appointed guardian of his nephews by order of the Probate Court of Carlton County.

Two deeds were executed transferring the Clark allotment to Reliable Investment: the first was dated October 27, 1916, by the adult heirs, the second was dated February 24, 1917 by Jackson on behalf of Clyde and Ned. Both deeds were approved by President Woodrow Wilson on April 27, 1917, and recorded in Carlton County on June 18, 1917. In fulfillment of the purchase price, equal amounts of $408.33 were deposited in the individual accounts of all six heirs during the quarter ending June 30, 1917, including Ned's trust account. Ned never challenged the sale.

Plaintiffs, Ned's direct descendants, filed this action in 1984, alleging that the conveyance of Ned's interest is void because of substantive and procedural errors in the form, execution, and approval of the deeds, and because the probate court did not have jurisdiction to appoint a guardian for Ned, a non-resident. Plaintiffs named the United States as defendant, as well as persons claiming under the 1917 deed. Plaintiffs seek to void the sale of Ned's share and to be declared owners of his interest in the property, as well as money damages (whether from both the private defendants and the United States is unclear) for the loss of use of the property, rental income, and revenue from timber sales.

## II. JURISDICTIONAL BASES

Plaintiffs alleged that the district court [1] had jurisdiction over their claims under 28 U.S.C. § 1362 and § 1331 by reference to 25 U.S.C. § 279.[2] The court,

[*] The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The Honorable Donald D. Alsop, Chief Judge of the United States District Court, District of Minnesota.

2. As 25 U.S.C. § 279 concerns "Rations to mission schools," we assume that 25 U.S.C. § 379,

however, correctly found jurisdiction at least as to the private defendants, under 25 U.S.C. § 345, the jurisdictional provision of the Indian General Allotment Act (Act), 23 U.S.C. § 331 *et seq.*

■ 28 U.S.C. § 1362 is inapplicable because it authorizes actions by "any Indian tribe or band," not suits by individual Indians. *See Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974) (purpose of § 1362 is to authorize suits which the United States could have instituted on behalf of Indian tribes where it has declined to do so); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3579, p. 262, 264 (1984) (purpose of § 1362 "was to permit Indian tribes or bands of the sort described in the statute to bring a suit that otherwise would raise a federal question regardless of the amount in controversy.... It has no application to suit by individual Indians."); *cf. Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 475 n. 14, 96 S.Ct. 1634, 1642 n. 14, 48 L.Ed.2d 96 (1976).

There is no need to examine the question whether general federal question jurisdiction is present by virtue of plaintiffs' reliance on 25 U.S.C. § 379, because 25 U.S.C. § 345 has been construed to grant jurisdiction over suits involving the interests and rights of an Indian in his allotment or patent after he has acquired it. *United States v. Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 2231, 90 L.Ed.2d 841 (1986); *cf. Begay v. Albers,* 721 F.2d 1274, 1277-79 (10th Cir.1983) (jurisdiction under § 345 and under § 1331 over suit by Indian allottee to cancel deeds that were forged). Such grant includes actions involving claims to an already existing allotment. *Nichols v. Rysavy,* 809 F.2d 1317, 1325 (8th Cir.1987); *Loring v. United States,* 610 F.2d 649, 650-51 (9th Cir.1979); *cf. Bird Bear v. McLean County,* 513 F.2d 190 (8th Cir.1975) (jurisdiction over action by Indian allottees against United States, county and township under § 345). Defendants do not contest the district court's conclusion that it had subject matter jurisdiction over this cause.

The principal thrust of plaintiffs' action is to establish their interest over and against the title of the private defendants. It is not completely clear why the United States was made a defendant, nor what relief was sought against it. It may have been joined because a declaration that the conveyance of Ned's interest was void would necessarily determine that the trust obligation of the United States had continued. *See Begay v. Albers,* 721 F.2d 1274 (10th Cir.1983). If, however, plaintiffs meant to seek damages from the United States, it must be on the theory that in approving the deed the President or other governmental agent had failed to fulfill fiduciary obligations. There would need to be jurisdiction and waiver of immunity before such a claim could be entertained against the United States.

The government does suggest that this court may not have jurisdiction over this appeal because the only statute that could confer jurisdiction in the district court over a claim against the United States is 28 U.S.C. § 1346(a)(2) (the Little Tucker Act). The Act provides for concurrent jurisdiction of the district courts with the United States Claims Court over actions against the United States not exceeding $10,000, founded upon (for our purpose) an Act of Congress, and 28 U.S.C. § 1295(a) provides that the Federal Circuit shall have exclusive jurisdiction of appeals of claims brought in part pursuant to § 1346(a)(2). *See Mottaz,* 106 S.Ct. at 2233 n. 11. As the Supreme Court has recently held that a "mixed" case, involving both a non-tax Little Tucker Act claim and a Federal Tort Claims Act claim under 28 U.S.C. § 1346(b), may only be appealed to the Court of Appeals for the Federal Circuit, *United States v. Hohri,* — U.S. —, —, 107 S.Ct. 2246, 2253-54, 96 L.Ed.2d 51 (1987), we examine whether this action presents a Little Tucker Act claim in addition to a claim under the Allotment Act.

First, plaintiffs did not plead or have they ever argued that jurisdiction exists under the Little Tucker Act, in addition to

concerning the "Sale of allotted lands by heirs," was intended.

or rather than under the Allotments Act. *See Mottaz*, 106 S.Ct. at 2234, *quoting Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 481, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915) ("plaintiff is absolute master of which jurisdiction he will appeal to"). Indeed, their decision to file in the district court coupled with the failure to allege that their claim against the government does not exceed $10,000, strongly suggests that they do not seek relief under the Little Tucker Act.

 Second, while the Little Tucker Act does provide jurisdiction over and waive the sovereign's immunity as to claims within its purview, it creates no substantive right enforceable against the United States for money damages. *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). In order to state a cognizable claim, the claimant must demonstrate that the substantive law upon which he relies can fairly be interpreted to mandate compensation by the Federal government. *Id.* at 216–17, 103 S.Ct. at 2967–68. As "the General Allotment Act does not confer a right to recover money damages against the United States" for breach of its "limited trust relationship" with allottees, *id.* at 217, 103 S.Ct. at 2968, plaintiffs cannot obtain relief pursuant to § 1346(a)(2).

 The jurisdiction of the district court was not invoked under the Little Tucker

Act, and appeal to this court, we conclude, is proper.

### III. PLAINTIFFS' CLAIMS AGAINST THE PRIVATE DEFENDANTS

We turn to whether the statute of limitations of the Indian General Allotment Act, 25 U.S.C. § 347,[3] bars plaintiffs' action against the private defendants. *Nichols v. Rysavy*, 809 F.2d at 1328–29.[4]

On September 30, 1854, the United States entered into a treaty with the Chippewa Nation, 10 Stat. 1109, providing that certain lands were to be allotted to its members. The United States was to define the boundaries of the reserved tracts, and the President might assign 80 acres to family heads or single persons, with such restrictions on alienation and rules regarding disposition of the land upon the death of the allottee as he chose to impose.

 As plaintiffs' ancestor received her allotment pursuant to this treaty, they are heirs claiming under a patentee for the possession or rents or profits of lands patented in severalty under treaty, and § 347 therefore controls. That § 347 refers to approval by the Secretary of the Interior does not defeat its application here, as presidential approval would fulfill the purpose of federal review of alienation of Indian lands. *See Nichols*, at 1321–22.

 An appropriate state statute of limitations[5] is the Minnesota Marketable Title

---

**3.** 25 U.S.C. § 347 provides:

In all actions brought in any State court or United States court by any patentee, his heirs, grantees, or any person claiming under such patentee, for the possession or rents or profits of lands patented in severalty to the members of any tribe of Indians under any treaty between it and the United States of America, where a deed has been approved by the Secretary of the Interior to the land sought to be recovered, the statutes of limitations of the States in which said land is situated shall be held to apply, and it shall be a complete defense to such action that the same has not been brought within the time prescribed by the statutes of said State the same as if such action had been brought for the recovery of land patented to others than members of any tribe of Indians.

**4.** Relying on this court's holding in *Mottaz v. United States*, 753 F.2d 71 (8th Cir.1985), that a

cause of action cannot accrue on a void transaction, the district court reached and rejected the merits of plaintiffs' claims. However, the Supreme Court in *United States v. Mottaz*, 106 S.Ct. 2224 (1986), implicitly rejected that holding by its application of the limitations provision of the Quiet Title Act, 28 U.S.C. § 2409a(f), to an action by an Indian to quiet title to allotted land, without consideration of the validity of the transaction. We likewise do not reach the merits, and affirm the judgment upon a ground different from the one advanced by the district court.

**5.** The landowners also suggest that M.S.A. § 541.02 (1986), Recovery of real estate, 15 years, may apply. This statute, concerning claims of adverse possession, is less generous to plaintiffs.

Act, M.S.A. § 541.023, which provides in relevant part:

Subdivision 1. Commencement. As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any political division thereof, after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action....

\* \* \* \* \* \*

The source of title here, the approved deed to Reliable Investment, was recorded in 1917. As plaintiffs' suit was commenced in 1984, their action is barred and any rights they might have had are extinguished. *See B.W. & Leo Harris Co. v. City of Hastings*, 240 Minn. 44, 59 N.W.2d 813, 816 (1953) (construction of § 541.023); *Beaver v. Cowan*, 104 Okl. 63, 230 P. 251 (1924) (action by heirs of allottee barred by Arkansas statute, where sale by allottee's devisee to third party approved by Secretary of Interior, even if Secretary was without such authority); *Beeman v. Holt*, 109 Okl. 256, 235 P. 167 (1925) (same); *but cf. Begay v. Albers*, 721 F.2d 1274 (10th Cir.1983) (where allotment issued pursuant to 25 U.S.C. § 332, rather than treaty, no mention of § 347 or any statute of limitations in affirming judgment that Indian allottees recover possession and title to land conveyed by forged deeds approved by Secretary of Interior).

## IV. WAIVER OF SOVEREIGN IMMUNITY

■ Although not addressed by the government before this court, it is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Such

waiver "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Plaintiffs must therefore look beyond the jurisdictional grant of § 345 for a waiver of sovereign immunity with respect to their claims in order to recover from the United States. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Section 345 provides no such waiver as to the type of damage claim which may be alleged here.

In *Mottaz*, the Supreme Court held that § 345 contemplates two types of suits: those seeking the issuance of an allotment, and those involving the Indian allottee's interests and rights after he has acquired the allotment. 106 S.Ct. at 2231. Thus

to the extent that § 345 involves a waiver of federal immunity, as opposed to a grant of subject-matter jurisdiction to the district courts, that section "authorizes, and provides governmental consent for, only actions *for* allotments." [*Affiliated Ute Citizens v. United States,*] 406 U.S. [128] at 142, 92 S.Ct. [1456], 1466 [31 L.Ed.2d 741] (emphasis added). See also *Naganab v. Hitchcock*, 202 U.S. 473 [26 S.Ct. 667, 50 L.Ed. 1113] (1906) (sovereign immunity precludes suit against United States regarding disposition of Indian lands).

106 S.Ct. at 2231–32.

Plaintiffs' complaint against the United States cannot be construed as an action for an allotment, to protect or preserve an allotment once issued, or to determine rights appurtenant to an allotment. *See Scholder v. United States*, 428 F.2d 1123, 1126–27 (9th Cir.1970) (§ 345 provides no waiver for claim of mismanagement by Bureau of Indian Affairs of irrigation project affecting allotted lands). It is rather a collateral claim for breach of fiduciary duty on the part of federal officials in the administration of the allotment program. Section 345 simply does not express an unequivocal waiver for what is in effect a tort claim against the government and its officers. *Cf. Antoine v. United States*, 637 F.2d 1177, 1181 (8th Cir.1981) (United

States proper defendant in suit regarding government's failure to issue patent pursuant to Sioux treaty); *Fontenelle v. Omaha Tribe of Nebraska*, 430 F.2d 143, 146–47 (8th Cir.1970) (§ 345 provides waiver where United States joined as trustee for tribe in dispute regarding allotment's boundary line); 28 U.S.C. § 2671 *et seq.* (Federal Tort Claims Procedure).

### V. STATUTE OF LIMITATIONS

Even if § 345 were held to waive the United States' immunity from suit on this type of claim, we have recently held that 28 U.S.C. § 2401(a), the general six year statute of limitations governing suits against the United States, applies to actions brought under § 345. *Nichols v. Rysavy*, 809 F.2d at 1327–28; *see also Christensen v. United States*, 755 F.2d 705 (9th Cir.1985). Because it would be unfair to hold that the enactment in 1948 of § 2401(a) instantly barred prior claims, we held in *Nichols* that § 2401(a) began to run as to previously accrued claims at the time of its enactment, June 25, 1948. 809 F.2d at 1328. As plaintiffs did not bring suit within six years, any action they might have against the United States is now barred.

The judgment appealed from is AFFIRMED.