This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36108**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CURTIS BITSUI,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Navajo Nation Department of Justice
Stanley M. Pollack
Window Rock, AZ

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** In this civil appeal, Curtis Bitsui challenges the district court's order enjoining him from interfering with access to and use of an acéquia that runs through the land in which he holds a beneficial interest. Bitsui advances two arguments on appeal: (1) the district court lacked subject matter jurisdiction because the actions complained of occurred on land that is Indian Country as defined in 18 U.S.C. § 1151(c) (2018); and (2) the district court erred in not dismissing the action pursuant to Rule 1-019 NMRA because the

United States is an indispensable party in an action affecting the legal title of the same land. Concluding that the district court had subject matter jurisdiction and that the United States is not an indispensable party, we affirm.

**BACKGROUND**

**{2}** The unique facts of this case present yet another example of the difficulty in determining whether New Mexico state courts can properly exercise subject matter jurisdiction over a civil matter that arises in what might be Indian Country.

**{3}** The underlying facts begin with a dispute between Bitsui, an enrolled member of the Navajo Nation, and the San Jose de la Cienega Community Ditch Association (the Association). After at least seven years of disagreement, during which the negotiations between Bitsui and the Association failed, the State filed a civil complaint in state district court seeking injunctive relief against Bitsui. The complaint asserted that Bitsui was interfering with the Association's rights to use the San Jose de la Cienega Acéquia[1] (the Acéquia), pursuant to NMSA 1978, Section 73-2-4 (1851-1852); NMSA 1978, Section 73-2-5 (2005); NMSA 1978, Section 73-2-6 (1851-1852); and NMSA 1978, Section 73-2-64 (2005). Specifically, the State maintained that Bitsui was diverting water from the Acéquia, destroying the Acéquia channel, and refusing the Association's members maintenance-related access to the Acéquia.

**{4}** Bitsui moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the actions complained of occurred on land considered Indian Country under § 1151(c). In relevant part, Indian Country is defined as "all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." § 1151(c); *see Tempest Recovery Servs., Inc. v. Belone*, 2003-NMSC-019, ¶ 17, 134 N.M. 133, 74 P.3d 67 (overruling prior New Mexico Supreme Court precedent to conclude that § 1151 defines Indian Country jurisdiction both criminally and civilly in New Mexico). Bitsui further argued that the United States has sole jurisdiction to adjudicate an offense allegedly committed in Indian Country. *See* 18 U.S.C. § 1152 (2018) ("Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian [C]ountry.").

**{5}** In his motion, Bitsui explained the historical underpinnings of his contention that the land on which the State sought to enjoin his actions is within Indian Country. Specifically, Bitsui claimed the land was allotted in trust by the United States in accordance with a July 4, 1884 act of Congress, otherwise known as the Indian Homestead Act, to the widow and heirs of Francisco Pieseto, to whom Bitsui is a successor in interest. Consequently, Bitsui concluded it is an "Indian allotment" under the federal definition of Indian Country. Bitsui attached to his motion a copy of the

---

1The San Jose de la Cienega Acéquia is alternatively referred to in the record proper as the San Jose de la Cienega Community Ditch.

instrument conveying the land interest, dated January 21, 1953, and a Bureau of Indian Affairs title status report as support for his arguments.

{6}     Responding to Bitsui's motion to dismiss, the State first set forth the history of the Acéquia. The State presented survey plats showing that the Acéquia was in existence before the United States' acquisition of this territory from Mexico and that the Office of the State Engineer has given the Acéquia a priority date of 1805, which makes it an "ancient acéquia" under the statutes of New Mexico. Citing to Section 73-2-6, which provides that "[t]he course of ditches or ac[é]quias established prior to July 20, 1851, shall not be disturbed[,]" the State argued that the issue is a matter of state law over which the district court has jurisdiction.

{7}     Next, the State set forth the history of Mr. Pieseto's application for the land. The State presented Mr. Pieseto's original application and affidavit for the land, which were filed under the Stock-Raising Homestead Act, 43 U.S.C. §§ 291-298 (repealed 1976). Additionally, the State presented a letter from the Special Allocating Agent for the Eastern Navajo Indian Agency, Chas. E. Roblin, which stated that identifying Mr. Pieseto as a member of the Navajo Nation was unnecessary because Mr. Pieseto could enter and hold the land as a United States citizen. The State also presented a letter to Mr. Roblin that indicated that the application was then linked to the Indian Homestead Act of July 4, 1884, when Mr. Pieseto neglected to remit the filing fees normally charged for applications under the general homestead laws. After Mr. Pieseto's death, his widow, Pablita Pieseto, applied to reinstate the entry and executed a "stock-raising homestead final proof," which the State presented. The State also presented a letter to Ms. Pieseto from the Bureau of Land Management acknowledging that all requirements for a "stock[-]raising homestead entry" had been completed, a final certificate was issued, and her case was approved for patenting.

{8}     The State also relied on the language of the patent, which provided that the land was conveyed

> subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts[.]

The State argued that this language meant "[t]he patent not only excludes these rights to the water and ditches from the 'bundle of sticks' which the federal government holds in trust, but it specifically places the ac[é]quia ditch and its easement under the laws and local customs of the State of New Mexico[.]"

{9}     Following a hearing on Bitsui's motion to dismiss, the district court issued a decision and order denying the same. The decision and order concluded that Bitsui's jurisdictional argument failed for three reasons. First, the twenty-five-year Indian trust period ended twenty-five years after its creation by operation of the deed itself. Second, even if the land were still held in trust, the language of the patent makes it clear that the

land is subject to other uses existing at the time the deed was issued, which are outside the trust. Third, the patent created a trust for a United States citizen because the original applicant applied as a United States citizen, not as a tribal member.

**{10}** In a second motion to dismiss, Bitsui again raised the subject matter jurisdiction issue and also argued that dismissal was proper because of the State's failure to join the United States as an indispensable party under Rule 1-019. In response, the State again set forth the history and language of the patent in arguing that the district court had subject matter jurisdiction. The State also argued that the cases Bitsui cited for the proposition that the United States is an indispensable party had no bearing on whether the State could obtain an injunction to prevent Bitsui's interference with the Acéquia. The district court likewise denied Bitsui's second motion to dismiss.

**{11}** The district court then conducted a hearing on the merits of the case. At the hearing, the court first heard from the State's witnesses: Antonio Trujillo, the former mayordomo of the Association, and Leon Tafoya, the then-current mayordomo of the Association. Their testimony established the following. Construction of the Acéquia began in 1802 and was completed in 1805 or 1806. The Acéquia has been in continuous use since it was constructed. A mayordomo is responsible for ensuring that the ditches are clean and for assigning water to people on designated days. The Association conducts yearly maintenance that involves cleaning the ditch and removing accumulated brush and debris. Ms. Pieseto had contracted with the Association to use the Acéquia to irrigate while she lived on the land. The mayordomos did not have any issues regarding access to the property for maintenance until Bitsui interfered with that maintenance by locking the gate and placing a no trespassing sign on a fence over the Acéquia.

**{12}** The district court also heard from Bitsui's witness, Maryland Begay, an employee of the Division of Land Title and Records of the Southwest Region of the Bureau of Indian Affairs. Ms. Begay provided a title status report for Bitsui's land that was completed the day before the hearing. The title status report indicated Bitsui was one of sixty-six unique interest holders who held an undivided interest in the approximately 177-acre parcel of land. The title status report further indicated that the parcel was an Indian allotment held in trust by the United States. Within the parcel, Bitsui has a one-acre residential lease. Bitsui did not put on evidence to rebut the evidence that he interfered with the maintenance of the Acéquia, nor did he challenge the testimony regarding the creation and continuous use of the Acéquia.

**{13}** Following the hearing, the district court entered an order titled "Decision Regarding Water Access" (the Decision) that enjoined Bitsui from

> stopping or preventing ac[é]quia users with water rights therein in exercising their limited right to enter the subject property in exercising their right to use their secured water rights and the ac[é]quia or ditches in which the water runs and to maintain the same to the extent . . . reasonably necessary to exercise such rights.

The Decision noted that "the issues before [the district court] d[id] not affect the status of the title to the property itself, but only whether an easement that existed at the time that the patent was issued may be enforced in [s]tate [c]ourt." Bitsui appeals the Decision.

## DISCUSSION

### I.       Subject Matter Jurisdiction

{14}    Bitsui argues that the district court erred by finding that the land was not held in trust by the United States. Rather, Bitsui contends that the patent for the land was issued pursuant to the Indian Homestead Act, thereby held in trust for an initial period of twenty-five years that has been indefinitely extended, and that the district court consequently did not have jurisdiction over this matter because state courts lack jurisdiction over matters arising on land defined as Indian Country. The State responds by arguing that the patent for the land was issued under the Stock-Raising Homestead Act and that the trust created by the patent expired after twenty-five years; therefore, the land is not Indian Country and the district court had subject matter jurisdiction. Alternatively, the State argues that even if the patent is deemed to have created an indefinite allotment, the express terms of the patent permit state jurisdiction over the Acéquia.

{15}    "This Court reviews subject matter jurisdiction de novo." *Weddington v. Weddington*, 2004-NMCA-034, ¶ 13, 135 N.M. 198, 86 P.3d 623. Here, we need not definitively decide whether the land constitutes Indian Country under § 1151(c) to resolve this matter. Instead, we assume, without deciding, that the land is Indian Country under § 1151(c) and our analysis proceeds from this assumption. We do so based upon our determination that under the circumstances of this case the district court could exercise jurisdiction even if the land was Indian Country.

{16}    "Federal statutes and case law govern questions regarding state court jurisdiction over Indians living in Indian [C]ountry[,]" *State v. Atcitty*, 2009-NMCA-086, ¶ 13, 146 N.M. 781, 215 P.3d 90, and our Supreme Court has stated that "[t]he test for determining whether a state court has jurisdiction over causes of action involving Indian matters is set forth in *Williams v. Lee*, 358 U.S. 217 . . . (1959)." *Found. Reserve Ins. Co., Inc. v. Garcia*, 1987-NMSC-024, ¶ 6, 105 N.M. 514, 734 P.2d 754. This Court has since reaffirmed New Mexico's "reliance on the *Williams* infringement test to determine state court jurisdiction over matters arising in Indian [C]ountry[.]" *Hinkle v. Abeita*, 2012-NMCA-074, ¶ 23, 283 P.3d 877; *see Tempest Recovery Servs. Inc.*, 2003-NMSC-019, ¶¶ 15-16 (applying the *Williams* infringement test to conclude the state possessed "concurrent jurisdiction" with the tribal court because litigating the claim in state court did not infringe on tribal sovereignty); *Chino v. Chino*, 1977-NMSC-020, ¶ 13, 90 N.M. 203, 561 P.2d 476 (applying the *Williams* infringement test and concluding that an action questioning "occupancy and ownership of land . . . within a reservation . . . would infringe upon the governmental powers of the tribe").

**{17}** Here, however, neither party's briefing to this Court addressed the infringement test set forth in *Williams*. Accordingly, we ordered simultaneous supplemental briefing from the parties regarding the application of the *Williams* infringement test.[2] Having reviewed the parties' supplemental briefing, we apply the right for any reason doctrine and affirm the district court's order based on the application of the *Williams* infringement test. *See Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 13, 134 N.M. 308, 76 P.3d 626 ("[A]n appellate court will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant." (internal quotation marks and citation omitted)). We explain.

**{18}** In *Williams*, the United States Supreme Court set forth its test in the following terms: "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." 358 U.S. at 220. Here, the parties have not directed us to any congressional act that governs whether the district court had subject matter jurisdiction over this matter, and we are not aware of any. Therefore, we next consider whether the district court's exercise of subject matter jurisdiction in this case infringed on that right.

**{19}** In applying the infringement test from *Williams*, New Mexico courts have considered the following factors: "(1) whether the parties are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) . . . the nature of the interest to be protected." *Tempest Recovery Servs., Inc.*, 2003-NMSC-019, ¶ 14 (internal quotation marks and citation omitted). As to the first factor, it is undisputed that Bitsui is an Indian and the State is a non-Indian entity.

**{20}** Regarding the second factor, although we have assumed that the land upon which Defendant's alleged activities were conducted is Indian Country under § 1151(c), neither party asserts, and our review of the record does not suggest, that this cause of action arose within the exterior boundaries of any Indian reservation. *Cf. Chino*, 1977-NMSC-020, ¶ 13 ("When the land lies within a reservation, enforcement of the owner's rights to such property by the state court would infringe upon the governmental powers of the tribe, whether those owners are Indians or non-Indians.").

**{21}** Regarding the third factor, Bitsui argues that both he and the Navajo Nation "have numerous important interests . . . that were infringed upon by the [district] court's exercise of jurisdiction[.]" Those interests were identified as:

---

2Despite our order asking for supplemental briefing only on the application of the *Williams* infringement test, Bitsui also made arguments against state court jurisdiction under the "preemptive approach" identified in *Chino*, 1977-NMSC-020, ¶ 11. To the extent that Bitsui argues that the "preemptive approach" arises out of the *Williams* infringement test, such an argument is unsupported by the authority he cites. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980) (stating that the two identified "independent but related barriers to the assertion of state regulatory authority over tribal reservations and members" arise from Congress's broad authority under the Indian Commerce Clause and the "semi-independent position" of tribes). Accordingly, we decline to further address this argument. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

the integrity of the territorial jurisdiction of the [Navajo] Nation; the right of the [Navajo] Nation to regulate the use of water within its territorial boundaries; the power of the Navajo Nation courts to enforce the [Navajo] Nation's laws; and the right of . . . Bitsui to have matters concerning the use of his land adjudicated in those courts pursuant to Navajo law.

Having fully reviewed Bitsui's arguments, we are not persuaded that these interests are infringed upon by the state district court's exercise of jurisdiction over this matter.

**{22}**    We recognize that New Mexico courts should not engage in determining tribal court jurisdiction. *Hinkle*, 2012-NMCA-074, ¶ 19. Accordingly, nothing in this opinion involves jurisdiction of the Navajo Nation's courts nor their power to enforce their laws. Furthermore, this dispute does not involve regulation of water nor does it involve Bitsui's use of his land. Rather, the right to the water has already vested in the Association. The Association now seeks enforcement of that right, which predates Bitsui's interest in the land. Our reasoning is supported by the express language of the patent, which provided that the land was

> *subject to* any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts[.]

(Emphasis added.) Based on this language, Bitsui's interest in the land is subject to the Association's pre-existing right, which the Association could enforce under applicable state law. Accordingly, we conclude that the state district court's exercise of subject matter jurisdiction over this matter does not infringe "on the right of reservation Indians to make their own laws and be ruled by them." *Williams*, 358 U.S. at 220.

**{23}**    As a final matter, we must ensure that this case does not present a circumstance where a tribal court would have exclusive jurisdiction. *See Garcia v. Gutierrez*, 2009-NMSC-044, ¶¶ 3, 27, 35, 147 N.M. 105, 217 P.3d 591 (recognizing the possibility of non-exclusive concurrent state and tribal jurisdiction, exclusive state jurisdiction, and exclusive tribal jurisdiction). The New Mexico Supreme Court has recognized exclusive tribal jurisdiction in three situations: (1) "where an action involves a proprietary interest in Indian land"; (2) "when an Indian sues another Indian on a claim for relief recognized only by tribal custom and law"; or (3) "when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian [C]ountry[.]" *Found. Reserve Ins. Co., Inc.*, 1987-NMSC-024, ¶ 10. For the reasons that follow, we conclude that this case does not present any of those situations.

**{24}**    As to the first situation, our Supreme Court cited its decision in *Chino* as an example of a situation in which exclusive tribal jurisdiction would exist. *Found. Reserve Ins. Co., Inc.*, 1987-NMSC-024, ¶ 10. The *Chino* Court addressed claims for forcible entry and wrongful detainer of a home located within the boundaries of the Mescalero Apache Reservation. 1977-NMSC-020, ¶¶ 2-3. Here, unlike the facts in *Chino*, the land

at issue is not located within the exterior boundaries of an Indian reservation. Therefore, we cannot say that this case involves a type of proprietary interest in Indian land for which exclusive tribal jurisdiction exists.

**{25}** Further, this is not a lawsuit between Indians under tribal custom or law. As to the third situation, our Supreme Court cited to the United States Supreme Court's decision in *Williams* as an example of a situation in which exclusive tribal jurisdiction would exist. *See Found. Reserve Ins. Co., Inc.*, 1987-NMSC-024, ¶ 10. In *Williams*, the Court was presented with a situation in which a non-Indian sued an Indian over a transaction that occurred on the reservation. 358 U.S. at 223. Again, this case does not involve a transaction or occurrence on land within the boundaries of an Indian reservation. *Cf. id.* ("The cases in [the United States Supreme] Court have consistently guarded the authority of Indian governments over their reservations."). Therefore, we are not presented with a situation in which the district court seeks to assert jurisdiction over an on-reservation matter.

**{26}** We note that this is not a typical situation in which a non-Indian individual sues an Indian individual. Rather, an entity, the State, is bringing this suit for violation of state laws. *See State Sec., Inc. v. Anderson*, 1973-NMSC-017, ¶ 12, 84 N.M. 629, 506 P.2d 786 (stating a tribal court does not have *exclusive* jurisdiction over "Indians off the reservation who violate state laws"). Because the facts of this case do not fall squarely within any of the situations in which a tribal court would have exclusive jurisdiction, we conclude that a New Mexico court may exercise concurrent jurisdiction over this matter.

**{27}** Under the right-for-any-reason doctrine, and applying the *Williams* infringement test, we conclude that the district court had subject matter jurisdiction over this matter because exercise of that jurisdiction did not infringe on an Indian tribe's interest in self-government and that a tribal court did not have exclusive jurisdiction over the State's claims.

## II. The United States Is Not an Indispensable Party in the Action

**{28}** Bitsui contends that the United States is an indispensable party under Rule 1-019 because the Decision "purports to change the legal status of the [land] from land held in trust by the United States to land held in fee by [Bitsui] and others . . . despite the fact that no fee patent was issued by the United States." Bitsui further contends that the United States has not waived its sovereign immunity to be joined in the action. Therefore, Bitsui argues, the district court erred by failing to dismiss the action for failure to join an indispensable party. We are not persuaded.

**{29}** "Rule 1-019 has been synthesized into a three-part analysis: (1) whether a party is necessary to the litigation; (2) whether a necessary party can be joined; and (3) whether the litigation can proceed if a necessary party cannot be joined." *Little v. Gill*, 2003-NMCA-103, ¶ 4, 134 N.M. 321, 76 P.3d 639. "If the litigation cannot proceed without a necessary party, the party is considered indispensable, and the case must be dismissed." *Id.* We review a district court's Rule 1-019 decision for an abuse of

discretion. *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-023, ¶ 25, 124 N.M. 698, 954 P.2d 763. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 39, 132 N.M. 207, 46 P.3d 668 (internal quotation marks and citation omitted).

**{30}** In support for his argument that the United States is a necessary party to this litigation, Bitsui cites *Begay v. Albers*, 721 F.2d 1274 (10th Cir. 1983). That case provides that "the United States is an indispensable party in any action determining a dispute arising over the possession of allotted land by virtue of its trust relationship and state courts do not have any jurisdiction over such disputes" under the statutory design of 25 U.S.C. § 348 (2018). *Begay*, 721 F.2d at 1279-80. The purpose of § 348 is "to render it impossible for an Indian allottee to sell, convey or in anywise encumber trust lands during the continuance of the trusteeship." *Begay*, 721 F.2d at 1279. Here, the parties' dispute does not involve any attempt by Bitsui to encumber the trust land at issue; therefore, *Begay* is inapposite. Furthermore, nothing in this opinion in any way affects the legal status of the patented land.

**{31}** Because Bitsui has failed to demonstrate that the United States was necessary to this litigation, we conclude that the district court did not abuse its discretion by declining to dismiss the State's action pursuant to Rule 1-019.

**CONCLUSION**

**{32}** For the foregoing reasons, we affirm.

**{33} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**